No. 97-460

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 308

STATE OF MONTANA,

Plaintiff & Respondent,

vs.

JOHN LANNY LYNCH,

Defendant & Appellant.

APPEAL FROM: District Court of the Nineteenth Judicial District,

In and for the County of Lincoln,

The Honorable Michael C. Prezeau, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Appellate Defender Office, Helena, Montana

For Respondent:

Joseph P. Mazurek, Attorney General, Jennifer Anders, Assistant Attorney General, Helena, Montana; Joseph Thaggard, Elizabeth Horsman, Special Deputy County Attorneys, Helena, Montana

Submitted on Briefs: November 19, 1998

Decided: December 15, 1998

Filed:

_____

Justice James C. Nelson delivered the Opinion of the Court.

**¶1. John Lanny Lynch (Lynch) appeals from his conviction in the District Court for the Nineteenth Judicial District, Lincoln County, of deliberate homicide, tampering with physical evidence and two counts of robbery and from the District Court's March 21, 1997 order denying his motion to suppress evidence. We reverse the District Court's order denying Lynch's motion to suppress. For that reason we also reverse Lynch's conviction and remand for further proceedings consistent with this opinion and for a new trial.**

## Background

**¶2. Because we are remanding for a new trial, our recitation of the facts and procedural background of this case will be limited to that necessary to address the dispositive legal issue.**

**¶3. Lynch was charged with the criminal offenses of which he was ultimately convicted as a result of his alleged involvement in the death of Brian Carreiro (Carreiro). Carreiro, a Las Vegas, Nevada resident, disappeared while on a hunting trip in Lincoln County, Montana in August 1995. An investigation into Carreiro's disappearance by Las Vegas authorities implicated Lynch and Larry Pizzichiello (Pizzichiello), both of whom accompanied Carreiro from Las Vegas to Montana on the hunting trip. After some four months of investigation by the Las Vegas Metropolitan Police, the case was handed over to Montana authorities for further investigation and prosecution. Ultimately, Lynch and Pizzichiello were charged with Carreiro's death, and the two were tried separately.**

**¶4. As part of the Nevada investigation, the Clark County (Nevada) District Attorney applied for and received judicial authorization from the county district court to intercept wire or oral communications made from the residence telephones of Lynch**

and Pizzichiello. As a result of these wiretaps, the Las Vegas investigators intercepted and recorded conversations between December 7, 1995, and January 11, 1996. The Nevada investigation was discontinued on January 9, 1996, once it was determined that Carreiro's death occurred in Montana. The Las Vegas police continued the wiretaps for sometime thereafter, however.

¶5. In the Montana prosecution, by a pretrial motion to suppress, Lynch objected to the State's use of this wiretap evidence and evidence flowing therefrom. Lynch argued that wiretap evidence is not admissible in Montana; that the wiretaps violated his right to counsel; that the wiretap application was faulty under Nevada law because it failed to establish probable cause; and that testimony of two State's witnesses, Gary Knight and Tony Guarino, was inadmissible as "fruit of the poisonous tree."

¶6. Lynch and the prosecution briefed this motion and, without hearing, the District Court denied the motion. In so ruling, the court rejected Lynch's arguments and, to the contrary, determined that Nevada law applied when the wiretaps were authorized and when the evidence from the wiretaps was obtained; that the wiretaps did not deny Lynch his right to counsel; that probable cause supported the application for and issuance of the wiretaps; and that, accordingly, the wiretap evidence as well as the testimony of Gary Knight and Tony Guarino "which could be said to flow from the wiretaps" would be admissible in Lynch's Montana trial.

¶7. At trial, the State offered the wiretap evidence and the testimony of Gary Knight and Tony Guarino against Lynch, and, as indicated, Lynch was convicted by the jury. This appeal followed.

## Issues

¶8. Lynch raises the following three issues on appeal:

¶9. 1. Did the District Court err when it admitted the wiretap evidence obtained in Nevada in Lynch's Montana trial despite this State's constitutional and statutory prohibitions against non-consensual wiretap evidence?

¶10. 2. In the alternative, if the law of the situs state controls, then did the District

Court err when it utilized Montana law to find that the Nevada district court had probable cause to issue the wiretap warrant and ignored the Nevada and federal standards required for electronic surveillance.

¶11. 3. Did the District Court err when it admitted the wiretap evidence as non-hearsay evidence.

¶12. Because we hold that the trial court erred as a matter of Montana law in admitting the Nevada wiretap evidence, Issue 1 is dispositive, and it is unnecessary that we address Issues 2 and 3.

Discussion

¶13. Our standard of review of a district court's denial of a motion to suppress is whether the court's findings of fact are clearly erroneous and whether those findings were correctly applied as a matter of law. *State v. Siegal* (1997), 281 Mont. 250, 257, 934 P.2d 176, 180, *overruled in part by State v. Kuneff*, 1998 MT 287, ___ P.2d ___, 55 St.Rep. 1173 (citations omitted). Here, the facts pertaining to the dispositive legal issue are not in dispute. Rather, the question--whether wiretap evidence obtained in a sister state is admissible in a Montana criminal prosecution--is purely one of law over which our review is plenary.

¶14. We commence our analysis by noting that nearly two decades ago this Court ruled that since Montana had failed to adopt a statutory scheme permitting electronic surveillance which is at least as restrictive as that required by the regulations of Title III of the federal Omnibus Crime Control and Safe Streets Act of 1968, 1968 U.S.C.C.A.N. (82 stat.) 2112, 2153 (Title III), state officials are prevented from non-consensual electronic monitoring of oral and wire communications. *State v. Hanley* (1979), 185 Mont. 459, 467-68, 605 P.2d 1087, 1091-92 (*Hanley I*). *Accord State v. Hanley* (1980), 186 Mont. 410, 419, 608 P.2d 104, 109 (*Hanley II*). In *Hanley I*, we also determined that neither the subsection (1)(c) exception to § 45-8-213, MCA, defining the criminal offense of violating privacy in communications, nor § 46-5-202, MCA [now § 46-5-221, MCA], setting forth the grounds for issuance of a search warrant, constituted a "statutory scheme" for electronic surveillance at least as restrictive as that required by the Title III regulations. *Hanley I*, 185 Mont. at 467-68,

**605 P.2d at 1091-92.**

¶15. To date, the Montana Legislature still has not adopted a statutory scheme at least as restrictive as the regulations of Title III for the non-consensual electronic monitoring of oral and wire communications.[1] Accordingly, the proscription against the use of this investigative tool and evidence obtained therefrom as articulated in *Hanley I*, remains the settled law of this State. Non-consensual wiretapping is not permitted in Montana and any such evidence obtained in Montana by public officials is not admissible in this State's courts.

¶16. The case at bar, however, presents a different, though related, issue--i.e., whether wiretap evidence obtained in a sister state by that state's public officials is admissible in a Montana criminal prosecution. Lynch maintains that it is not. In the alternative, Lynch argues if such evidence is admissible, the wiretaps at issue here did not comply with either Nevada law or federal law. To the contrary, the State and the trial court both take the position that the wiretap evidence is admissible and that the wiretaps were applied for and the electronic surveillance evidence obtained in compliance with the laws of Nevada.

¶17. We agree with Lynch's primary argument. Regardless of whether Nevada law meets the requirements of Title III and regardless of whether Nevada officials complied with their State's law and federal law in applying for the wiretaps and in obtaining the electronic surveillance evidence at issue, we determine that Montana law prohibiting the use of non-consensual wiretap evidence in this State's courts controls.

¶18. We reach this conclusion by application of conflicts of law principles. Framed in this context the question is: "Where evidence is obtained in a sister state by that state's officials, does Montana law or the sister state's law govern the admissibility of this evidence in a Montana court proceeding?" We addressed and answered this question in *State v. Beach* (1985), 217 Mont. 132, 705 P.2d 94.

¶19. Beach was arrested in Louisiana for contributing to the delinquency of minors. While in custody in that State he confessed to Louisiana authorities that he had murdered a woman in Montana. *Beach*, 217 Mont at 138,140, 705 P.2d at 98-99. In his Montana prosecution, Beach moved to suppress his confession arguing that it was obtained after he was denied his right under the "McNabb-Mallory"[2] rule to be

taken before a magistrate or judge to be arraigned and advised of his rights. This rule requires the exclusion of any confession obtained as a result of "unnecessary delay" in the initial appearance, and, in a modified form, was adopted by this Court in *State v. Benbo* (1977), 174 Mont. 252, 570 P.2d 894. *Beach*, 217 Mont. at 149, 705 P.2d at 105. The trial court denied Beach's motion.

¶20. On appeal, this Court applied Montana statutory and case law to the underlying facts surrounding Beach's Louisiana custodial confession and affirmed the District Court's determination that the defendant's statements were voluntary, and, consequently, admissible in his Montana trial. *Beach*, 217 Mont. at 149-52, 705 P.2d at 105-07.

¶21. Of importance to our discussion in the instant case, we rejected the State's argument that Louisiana law governed the admissibility of Beach's confession in Montana. We stated:

The general rule is that, as to questions of evidence, the law of the forum controls, 16 Am. Jur.2d, Conflict of Laws Section 131. This question is best characterized as being one of an application of the exclusionary rule, i.e. a rule of evidence. Thus Montana law should control. The State proposes that what actually is involved here is an application of substantive law, in which this Court should apply Louisiana law. This argument is not compelling for two reasons: first, the remedy requested by the defendant is not a remedy provided for by Louisiana law, but rather is a remedy provided by Montana evidence law; and secondly, we feel that whenever possible, defendants should be entitled to the fullest protection of Montana law when appearing in its courts.

*Beach*, 217 Mont. at 151, 705 P.2d at 106.

¶22. The same rule applies in the case at bar. In Lynch's Montana court proceedings, the admissibility of the wiretap evidence obtained in Nevada by Nevada authorities is governed, not by Nevada law, but by Montana law. As already pointed out, it is the settled law of this State that non-consensual wiretapping is not permitted in Montana and that the evidence obtained from wiretaps is not admissible in Montana courts. Therefore, under the *Beach* rule, evidence obtained from wiretaps is, likewise, not admissible in this State's courts notwithstanding that the evidence was obtained lawfully in a sister jurisdiction. As in *Beach*, by moving to suppress the Nevada

wiretap evidence, Lynch sought to take advantage of an exclusionary remedy based upon Montana evidence law. Since Lynch is being tried in Montana for crimes allegedly committed in this State he, like Beach, is entitled to the fullest protection of Montana law when appearing in its courts. The application of Montana law requires that the Nevada wiretap evidence and any evidence flowing therefrom be suppressed. [(3)](#)

¶23. In reaching this conclusion, it is necessary that we address the State's arguments that the *Beach* rule should be limited to cases where evidence was obtained in violation of the procedures of both the forum state and the situs state. The State maintains that traditional conflicts of law analysis should not be utilized in the criminal context because the policies underlying the exclusionary rule for violation of forum law do not necessarily apply with the same force to violations of the law of another state, let alone to activity that is legally conducted in the foreign jurisdiction. We disagree.

¶24. First, we see no compelling reason to limit the application of the *Beach* rule as the State suggests. Traditional conflicts of law analysis is straightforward and is facially neutral. Application of the rule that, as to questions of evidence, the law of the forum controls, can work as easily in favor of a party as it can against the party. Our decision in *Beach* as to the voluntariness of the accused's confession, for example, was grounded in the proposition that Beach's statements *did not violate Montana law*. *Beach*, 217 Mont. at 149-52, 705 P.2d at 105-07. There, the State benefited from application of the rule.

¶25. Second, we acknowledge that the objective of the exclusionary rule is to punish illegal police conduct and that the efficacy of the rule may be attenuated when applied in Montana to evidence obtained in another jurisdiction by authorities over which Montana has no control. Nonetheless, we conclude that when viewed in the context of the evidentiary question which it is, Montana's paramount interest in affording defendants the fullest protection of Montana law when appearing in its courts and this State's clear prohibition against non-consensual electronic surveillance of oral and wire communications, must prevail. The rights and protections under Montana law enjoyed by persons accused of and prosecuted for crimes committed in this State would be significantly diminished if evidence, clearly inadmissible if obtained in Montana, could nevertheless be used against the defendant simply because it was fortuitously gathered in some other jurisdiction

where Montana's evidentiary laws did not apply. The *character* of the evidence is what is fundamentally at issue, not where or how it was obtained. And, the *character* of the evidence is not changed simply because it was obtained in a different jurisdiction under different laws. Wiretap evidence is wiretap evidence, and, under Montana law, the use of such evidence in Montana courts is not permissible.

¶26. It is also necessary that we address our decision in *State v. Coleman* (1978), 177 Mont. 1, 579 P.2d 732, *cert. denied* 446 U.S. 970, 100 S.Ct. 2952, 64 L.Ed.2d 831. In that case, Coleman was arrested without a warrant in Idaho for a homicide committed in Montana. In his Montana prosecution he claimed that the Idaho authorities lacked probable cause for the arrest. We determined that probable cause did exist and, in reaching that conclusion, applied Idaho law citing the rule from *Miller v. United States* (1958), 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed. 2d 1332, that "[t]he legality of an arrest is determined by the law of the jurisdiction where the arrest was effected." *Coleman*, 177 Mont at 18-20, 579 P.2d at 743-44.

¶27. Our decision in *Beach* did not refer to *Coleman*. These two cases are not inconsistent, however. As we have already stated, questions concerning evidence admissibility and exclusion typically involve procedural considerations which are determined by the law of the forum. *See Beach*, 217 Mont at 151, 705 P.2d at 106; Restatement (Second) of Conflict of Laws § 138 cmts. a and b (1971); Robert A. Leflar et al., American Conflicts Law, § 116 (4th ed. 1986). On the other hand, questions involving the formalities for and validity of an arrest typically involve consideration of the substantive law of the state where the arrest took place. *See Miller*, 357 U.S. at 305-06, 78 S.Ct. at 1193-94, and cases cited therein. Basic conflicts of laws principles require application of the forum state's laws to questions of procedure (*Beach*), while questions involving substance are determined by the law of the situs state (*Coleman*).

¶28. Finally, the State argues that even if the trial court erred in failing to grant the accused's motion to suppress the wiretap and derivative evidence, the defendant's substantial rights were not prejudiced. We cannot agree. The wiretap evidence directly implicated Lynch in Carreiro's murder and in the concealment of his body, and the jury may well have weighed this evidence heavily in its determination to convict him of the crimes charged.

¶29. We hold that the District Court erred as a matter of law in denying Lynch's

**motion to suppress the Nevada wiretap evidence and evidence flowing therefrom and in admitting such evidence at Lynch's trial. As a consequence, Lynch's conviction is reversed and this cause is remanded for further proceedings consistent with this opinion and for a new trial.**

**¶30. Reversed and remanded.**

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE

/S/ JIM REGNIER

/S/ KARLA M. GRAY

/S/ WILLIAM E. HUNT, SR.

1. [1]We do not address here the question of whether such a statutory scheme, if adopted, would pass muster under Montana's constitutional right of privacy, Article II, Section 10. *See Siegal*, 281 Mont. at 275-78, 934 P.2d at 191-92.

2. [2]*See McNabb v. United States* (1943), 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819; *Mallory v. United States* (1957), 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479.

3. [3]We make no attempt to define the scope of evidence in this case that may have flowed from the wiretap evidence. The trial court indicated that the testimony of state's witnesses Gary Knight and Tony Guarino might fall into this category but that such evidence might not be suppressible for other reasons. We conclude that determining what evidence is derivative of the wiretaps and, therefore suppressible, is best left to the trial court on remand following further proceedings on this question.