**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Lawrence John PIZZICHIELLO,**
**Defendant–Appellant.**

**No. 00–30160.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 5, 2001

Filed Nov. 29, 2001

Amended Jan. 16, 2002.

Gregory A. Jackson, Jackson & Rise, Helena, Montana; Palmer A. Hoovestal, Helena, Montana, for the defendant-appellant.

Bernard F. Hubley, Assistant United States Attorney, Helena Montana, for the plaintiff-appellee.

Before: WALLACE, HALL, and T.G. NELSON, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Appellant raises numerous challenges to his sentence stemming from his plea of guilty to robbery affecting commerce in violation of the Hobbs Act. Specifically, appellant contends that the district court erred in ordering a two-level sentencing enhancement for obstruction of justice, in refusing to decrease the base offense level for his mitigating role in the offense, in refusing to grant downward departures on several grounds, in refusing to grant credit for good time earned while in state custody, and in awarding restitution. We conclude that these challenges lack merit, and therefore affirm the judgement below.

## I. Factual and Procedural Background

This case arises out of the robbery and murder of Brian Carreiro in Montana. In 1995, appellant Lawrence Pizzichiello was living in Las Vegas, Nevada, and was on

disability as a result of an accident. His friend and the victim in this case, Brian Carreiro, was also living in Las Vegas and also had a pending disability claim. On or about August 9, 1995, Carreiro received a settlement check in the amount of $7,500. He cashed the check and deposited the proceeds into his Las Vegas bank account. Pizzichiello was aware of the deposit.

Shortly after the deposit, Pizzichiello and Carreiro traveled in Carreiro's pickup truck from Las Vegas to a cabin in Montana owned by the father of co-defendant John Lanny Lynch. Pizzichiello and Carreiro went to Montana to pick up Lynch and drive with him back to Las Vegas. The morning after Pizzichiello and Carreiro arrived at the cabin, Lynch invited them to go for a walk on a path near the cabin. Pizzichiello testified that after walking a short distance, he heard a gunshot from behind, turned around, and realized that Lynch had shot Carreiro. Carreiro was lying on the ground, bleeding from the back of his head. Lynch was standing several feet away with a 9mm pistol in his hand, a pistol that Pizzichiello had traded to Lynch several months earlier. After several seconds, Lynch fired another round from the same pistol and again shot Carreiro in the side of the head. Pizzichiello was surprised when Lynch shot Carreiro and had no advance knowledge of Lynch's intention to kill and rob Carreiro.

Lynch started a fire in a 55–gallon barrel that was located a short distance from Carreiro's body. Pizzichiello and Lynch walked back to the cabin and drove Carreiro's truck to a location near the barrel. Pizzichiello then helped Lynch place Carreiro's body into the fire burning inside the barrel. At Lynch's direction, Pizzichiello removed Carreiro's personal belongings from the truck, including his clothes and wallet. Pizzichiello removed Carreiro's ATM/debit card from his wallet and handed the remainder to Lynch.

After the contents of the barrel burned for several hours, Pizzichiello and Lynch threw rocks in the barrel to break up the contents and add weight. Lynch had planned to roll the barrel into a nearby marsh to sink it in the water. When Pizzichiello and Lynch started to roll the barrel, the bottom fell out and the contents were discharged onto the ground. Pizzichiello dropped rocks on visible and recognizable bones while Lynch used a rock as a hammer to destroy the bones. Pizzichiello and Lynch then scattered the remains over the nearby ground and tried to mix them into the soil.

Pizzichiello, with Lynch, then drove Carreiro's truck to a nearby town, where they used an ATM machine to withdraw money from Carreiro's account. Pizzichiello knew Carreiro's PIN, having obtained it while Carreiro lived at Pizzichiello's house in Las Vegas. Pizzichiello and Lynch continued to withdraw money from ATM machines using Carreiro's ATM/debit card, splitting the money between them.

Pizzichiello and Lynch drove Carreiro's pickup truck back toward Las Vegas. When they encountered mechanical problems, they rented a U–Haul and towed the truck back to Las Vegas. Lynch made arrangements to have the truck repainted. After they returned to Las Vegas, Pizzichiello and Lynch continued to remove funds from Carreiro's account until the account was depleted, then destroyed the ATM card.

After Pizzichiello and Lynch became the focus of an investigation regarding Carreiro's disappearance, they solicited Gary Knight to provide false information to law enforcement officers. Additionally, Pizzichiello admitted in his plea agreement that he and Lynch provided false and misleading information to law enforcement officers. Pizzichiello and Lynch were originally prosecuted by the State of Montana.

They were convicted of Deliberate Homicide, Robbery, and Tampering with Physical Evidence, but their convictions were overturned on appeal because certain wiretap evidence was held inadmissible. *See State v. Pizzichiello,* 294 Mont. 436, 983 P.2d 888 (1999); *State v. Lynch,* 292 Mont. 144, 969 P.2d 920 (1998).

Pizzichiello and Lynch were subsequently indicted by a federal grand jury. The indictment charged Pizzichiello with conspiracy to commit robbery affecting commerce, 18 U.S.C. § 1951(a); robbery affecting commerce, 18 U.S.C. § 1951(a); and use or carrying of a firearm during a crime of violence, 18 U.S.C. § 924(c)(1) and (j)(1). Pizzichiello entered into a plea agreement with the government and pleaded guilty to a violation of 18 U.S.C. § 1951(a) and aiding and abetting in a robbery affecting commerce.

On March 31, 2000, Pizzichiello was sentenced to 151 months imprisonment and three years supervised release, and was ordered to pay a special assessment of $100 and restitution in the amount of $37,672. Judgment was entered on April 4, 2000. The district court granted Pizzichiello's request for an extension of time until May 15, 2000, to file his notice of appeal. Pizzichiello timely filed his notice of appeal on May 12, 2000. This court has jurisdiction over the final sentencing judgment pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## II. Standards of Review

■ This court reviews the district court's factual findings in connection with sentencing for clear error and its legal determinations *de novo. United States v. Maldonado,* 215 F.3d 1046, 1050 (9th Cir. 2000) (role adjustment), *cert. denied,* 531 U.S. 1172, 121 S.Ct. 1141, 148 L.Ed.2d 1004 (2001); *United States v. Cooper,* 173 F.3d 1192, 1204 (9th Cir.) (obstruction of justice), *cert. denied,* 528 U.S. 1019, 120 S.Ct. 526, 145 L.Ed.2d 408 (1999).

## III. Discussion

### A. Two–Level Enhancement for Obstruction of Justice

■ Section 3C1.1 of the United States Sentencing Commission Guidelines Manual requires a two-level enhancement if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the *instant offense of conviction* .... " U.S.S.G. § 3C1.1 (1998) (emphasis added). The Guidelines state that: "The term 'instant' is used in connection with ... 'offense of conviction' ... to distinguish the violation for which the defendant is being sentenced from a prior or subsequent offense, or from an offense before another court (*e.g.,* an offense before a state court involving the same underlying conduct)." U.S.S.G. § 1B1.1, cmt. n. 1(*l* ) (1998). Pizzichiello contends that the enhancement for obstruction of justice was improper because he did not obstruct justice in relation to the instant federal offense, but only in relation to the prior state proceedings. This contention is without merit.

■ In *United States v. Luca,* 183 F.3d 1018 (9th Cir.1999), we affirmed the imposition of an obstruction of justice enhancement even though the defendant's false statements had been made in response to a state, not a federal, subpoena. We rejected the defendant's argument that § 3C1.1 applies only where the obstructive conduct was directed to federal law enforcement officials, noting that the state agency "was investigating 'the offense,' namely the Ponzi scheme that [the defendant] generated and which resulted in his conviction and sentence in [the federal] case." *Id.* at 1022. We found "no convincing reason to

distinguish between state and federal law enforcement officers who are investigating the same offense." *Id.* Instead, the focus is on the effect of the obstructive conduct. *Id.* at 1023. "[S]o long as the district court found that the defendant 'willfully and materially impeded the search for justice in the *instant offense,*' the enhancement should apply, even if the obstruction occurred before state rather than federal law enforcement officials." *Id.* (quoting *United States v. Zagari,* 111 F.3d 307, 328–29 (2d Cir.1997)).

In the instant case, there was sufficient evidence to support the conclusion that Pizzichiello engaged in a purposeful effort to cover up the robbery and murder of Carreiro. Pizzichiello destroyed evidence, namely the remains of Carreiro and Carreiro's ATM/debit card, gave misleading information to the police, and attempted to persuade Gary Knight to give false information and testimony. Pizzichiello does not dispute that his conduct significantly impeded the investigation into Carreiro's disappearance. His conduct was designed to hide Carreiro's disappearance and obstruct discovery of the murder and robbery of Carreiro. As in *Luca,* the state officials to whom Pizzichiello directed his obstructive conduct were investigating the same robbery offense to which Pizzichiello pleaded guilty in federal court. That he was first prosecuted in Montana state court for robbery and murder does not change the fact that his obstructive conduct was intended to cover up the same offense for which he was later convicted in federal court.

Therefore, the enhancement for obstruction of justice was proper.

## B. Mitigating Role in the Offense

■ Pizzichiello argues that he was entitled to a reduction under U.S.S.G. § 3B1.2 for his minor role in the offense because: he had no advance knowledge of Lynch's plan to kill and rob Carreiro; he was surprised and shocked by the homicide; he was following Lynch's directions in assisting in the robbery; and he was subservient to Lynch due to his psychological condition. As we explained in *United States v. Ladum,* 141 F.3d 1328 (9th Cir. 1998):

A district court's finding that a defendant does not qualify for minor or minimal participant status is heavily dependent on the facts of the particular case, and we uphold such a finding unless it is clearly erroneous. The defendant has the burden of proving by a preponderance of the evidence that he is entitled to a downward adjustment based on his role in the offense. Less culpability than other codefendants does not necessarily entitle a defendant to a role adjustment. He must show that he was substantially less culpable than the average co-participant. Section 3B1.2 role adjustments are to be used infrequently.

*Id.* at 1348 (internal citations omitted); *see also United States v. Pena–Gutierrez,* 222 F.3d 1080, 1091 (9th Cir.), *cert. denied,* 531 U.S. 1057, 121 S.Ct. 670, 148 L.Ed.2d 570 (2000).

The district court considered the reduction, and stated that it was "disinclined to give any reduction for minor participant." The district court's conclusion was not clearly erroneous. The court found that although Lynch shot Carreiro, and Pizzichiello was unaware of Lynch's plan, Pizzichiello participated in disposing of the body, became involved in the robbery, was the person who had access to Carreiro's account, withdrew Carreiro's money from the account, spent it on himself, shared some of the money with Lynch, and participated in the cover-up. The court's findings are supported by the evidence. Moreover, Pizzichiello's significant involvement in the robbery and cover-up support

the court's conclusion that although Lynch shot Carreiro, Pizzichiello was not *substantially* less culpable than Lynch.

Accordingly, the district court did not err in refusing to grant a decrease in the base offense level for a mitigating role.

### C. Downward Departure

■ Pizzichiello next challenges the district court's refusal to grant a downward departure for diminished capacity, coercion/duress, aberrant behavior, or because his case falls outside the "heartland" of cases contemplated by the Guidelines. "Although a district court's erroneous determination that it lacks the legal authority to grant a departure on a certain ground is reviewable as an error of law, a discretionary refusal to depart downward is not reviewable in this court." *United States v. Wetchie*, 207 F.3d 632, 636 (9th Cir.) (citation omitted), *cert. denied*, 531 U.S. 854, 121 S.Ct. 134, 148 L.Ed.2d 87 (2000); *see also United States v. Pinto*, 48 F.3d 384, 389 (9th Cir.1995).

### 1. Diminished Capacity

■ The district court stated that it had the discretion to grant a downward departure for diminished capacity under U.S.S.G. § 5K2.13, but refused to do so because it interpreted the Guidelines to prohibit a departure where, as here, the crime involved actual violence. Because the district court rested its decision on an issue of law, this court has jurisdiction to review its decision, and its decision is subject to *de novo* review.

■ Section 5K2.13 states that "the court *may not* depart below the applicable guideline range if ... (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence." U.S.S.G. § 5K2.13 (1998) (emphasis added). The Guidelines thus prohibit departure where

the offense involved actual violence. *Accord United States v. Thames*, 214 F.3d 608, 614 (5th Cir.2000) (holding that under § 5K2.13, "no departure may be given where the crime was violent in nature"). The district court looked at all the circumstances of the robbery offense and found that the offense involved actual violence. This finding is supported by the evidence. Therefore, the refusal to depart was proper.

### 2. Coercion/Duress

■ U.S.S.G. § 5K2.12 permits the district court to depart downward if "the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense...." U.S.S.G. § 5K2.12 (1998). The standard for the departure thus is imperfect duress. *Pinto*, 48 F.3d at 388–89. Pizzichiello argues that the district court incorrectly concluded that the departure was warranted only if the coercion or duress amounted to a complete defense.

At sentencing, the district court stated:
I think the evidence—with respect to coercion, duress, likewise, I'm not going to exercise my discretion and make a downward departure there. For whatever reasons motivated Mr. Pizzichiello for the period of time going to Montana, what happened in Montana and for the time until he came here, I don't think that the coercion and duress standard under 5K2.12 is met by the facts in the record. He did not commit this offense because of coercion, blackmail or duress under circumstances *that would amount to complete the offense.* And, consequently, in looking at the guideline, I do not believe that there's anything in the record that would satisfy the exercise of discretion in granting a downward departure to Mr. Pizzichiello.

Sent. Tr. at 102–03, ER 102–03 (emphasis added). Pizzichiello argues that the court's statement that he did not commit the offense under circumstances "that amount to complete the offense" indicates that the court thought the coercion/duress had to amount to a complete defense.

▮▮▮▮▮ Pizzichiello's argument is without merit. Both parties in their sentencing memoranda identified the correct standard as imperfect duress. Where the defendant requested a departure, we will assume that the district court understood the law and exercised its discretion to refrain from departing, particularly where, as here, the parties identified for the court the correct standard to be applied. *See United States v. Garcia–Garcia*, 927 F.2d 489, 491 (9th Cir.1991) (per curiam). The district court concluded that the departure was not warranted on the facts of the case, and there is no indication that the district court believed that it was prevented as a matter of law from departing. The court's decision thus is discretionary and therefore not reviewable. *See Pinto*, 48 F.3d at 389.

Moreover, construing Pizzichiello's claim as a challenge to the district court's factual findings regarding the lack of sufficient coercion or duress, the district court's findings are not clearly erroneous. As the district court noted, Pizzichiello was "the person who utilized the—he had the access to [Carreiro's] account, he used the money, he took the money, he spent it on himself, spent it for his own needs, shared some of the money with John Lynch, participated in this whole cover-up process." ER 102. This evidence supports the conclusion that Pizzichiello acted independently in aiding and abetting the robbery, not as a result of coercion or duress.

### 3. Aberrant Behavior

Pizzichiello argues that the district court erred in failing to find that, under the totality of the circumstances, his behavior was aberrant and therefore a permissible ground for departure. The district court properly considered the facts and circumstances of Pizzichiello's offense, but decided that it would not exercise its discretion to depart for aberrant behavior. There is no indication that the district court rested its decision on the view that it could not, as a matter of law, depart. We thus lack jurisdiction to review the district court's decision. *See Wetchie*, 207 F.3d at 636; *Garcia–Garcia*, 927 F.2d at 491.

### 4. Outside the "Heartland"

Pizzichiello also argues that the district court erred in failing to find that his case falls outside the "heartland" of cases contemplated by the Guidelines. Such a departure is permitted under 18 U.S.C. § 3553(b) and U.S.S.G. § 5K2.0. The Guidelines Commentary cautions, however, that cases that fall outside the "heartland" of cases covered by the Guidelines will be "extremely rare." U.S.S.G. § 5K2.0 cmt. (1998).

Pizzichiello argues that his case falls outside the heartland because of a combination of mitigating factors. The district court rejected each factor as a ground for departure on its own. The district court did not explain at the sentencing hearing its reasons for refusing a "heartland" departure. However, Pizzichiello requested the departure in his sentencing memorandum, and he identified the correct legal standard. There is no indication that the district court believed it lacked discretion to depart under § 5K2.0 if it found Pizzichiello's case to fall outside the "heartland" of cases contemplated by the Guidelines. The district court's refusal to depart thus was discretionary and is therefore unreviewable. *See Wetchie*, 207 F.3d at 636; *Garcia–Garcia*, 927 F.2d at 491.

### D. Credit for Good Time Earned while in State Custody

 Pizzichiello argues that the district court erred in refusing to give him credit under 18 U.S.C. § 3585(b) for the 1,412 days he spent in state custody, and he makes several arguments regarding his due process rights in relation to his "good time" credits. However, it is the Attorney General, not the district court, who computes the credit under § 3585(b) after the defendant has begun to serve his sentence. *United States· v. Wilson,* 503 U.S. 329, 334, 337, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992). The district court thus did not err in failing to give Pizzichiello credit for his time spent in state custody.

### E. Award of Restitution

 The district court ordered restitution in the amount of $37,672, payable to Carreiro's mother, Phyllis Swallow. The restitution was to act as reimbursement for the funds stolen from Carreiro's account, funeral expenses, and lost wages and travel expenses for family members attending investigative meetings and the trials and sentencing of Pizzichiello and Lynch.[1] A restitution order is reviewed for an abuse of discretion, provided that it is within the statutory framework. *United States v. Lawrence,* 189 F.3d 838, 846 (9th Cir.1999). The district court's factual findings in support of a restitution order are reviewed for clear error. *Id.* Whether a restitution order is authorized by statute is reviewed *de novo. United States v. Laney,* 189 F.3d 954, 964–65 (9th Cir.1999).

Pizzichiello argues that: (1) the amount of the district court's restitution order was unsubstantiated; (2) the district court failed to make the required findings regarding Pizzichiello's ability to pay restitution; and (3) Carreiro's family members were not "victims" of his offense under the

Victim Witness Protection Act (VWPA), 18 U.S.C. §§ 3663–3664, and therefore he cannot be ordered to pay them restitution, absent such a requirement in his plea agreement.

Pizzichiello's first argument is without merit. Ms. Swallow testified at the sentencing hearing as to the amounts claimed for restitution. Her testimony gave the district court a reasonable basis upon which to determine the amounts and purposes of the travel expenses, lost wages, and funeral expenses. Pizzichiello does not dispute the amount taken from Carreiro's bank account. The district court's findings are not clearly erroneous. *See United States v. Miguel,* 49 F.3d 505, 511 (9th Cir.1995) (reviewing for clear error the district court's factual findings underlying a restitution order).

Pizzichiello next challenges the district court's failure to consider his ability to pay restitution. However, as the Government points out, 18 U.S.C. § 3663A requires mandatory restitution to victims of a crime of violence. 18 U.S.C. § 3663A(a)(1). Moreover, restitution must be ordered in "full," without consideration of the defendant's economic circumstances. 18 U.S.C. § 3664(f)(1)(a). Thus, Pizzichiello's challenge is without merit.

Finally, Pizzichiello argues that restitution is not authorized to Ms. Swallow because she and the other family members are not "victims" under the statute's definition of the term. However, we need not resolve this issue. Regardless of whether Carreiro's family members are "victims" under the VWPA, the statute authorizes the district court to order Pizzichiello to pay restitution.

Where the offense results in bodily injury and also in the death of a victim,

---

**1.** The restitution amount breaks down as follows: $3,872 for funeral expenses; $7,500 in travel expenses; $21,000 in lost wages; and $5,300 taken from Carreiro's bank account.

§ 3663(b)(3) authorizes the payment of "necessary funeral and related services" expenses. Section 3663(b)(1)(A) also authorizes the court to order the return of the stolen funds. Where the victim is deceased, payment should be made to the victim's estate. 18 U.S.C. § 3663(a)(1)(A). The government does not suggest that the family members to whom restitution was ordered were not the proper representatives of Carreiro's estate; thus, the order of restitution for funeral expenses and return of stolen funds was authorized.

That leaves the amount ordered for the family members' lost income and travel expenses. Whether or not Carreiro's family members qualify as "victims," they can recover lost income and travel expenses under § 3663(a)(2). After defining "victim," § 3663(a)(2) goes on to provide:

> In the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardian of the victim or representative of the victim's estate, another family member, or any other person appointed as suitable by the court, may assume the victim's rights under this section, but in no event shall the defendant be named as such representative or guardian.

18 U.S.C. § 3663(a)(2). Had Carreiro survived, he certainly would have been able to recover the expenses he incurred in participating in the investigation and prosecution of the robbery. Under § 3663(a)(2), family members may assume that right. It is reasonable that more than one family member might need to be involved in the investigation and prosecution of the crime in order to assert the rights of the deceased. Therefore, the district court did not abuse its discretion in ordering restitution for lost income and travel expenses payable to Carreiro's family members.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed.

## IV. Conclusion

For the foregoing reasons, we affirm the sentence of appellant Pizzichiello.

AFFIRMED.