No. 02-452

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 172

STATE OF MONTANA,

        Plaintiff and Respondent,

  v.

EUGENE SPOTTED EAGLE,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Ninth Judicial District,
In and for the County of Pondera, Cause No. DC 2001-16
The Honorable Marc G. Buyske, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

      Laurie McKinnon, Choteau, Montana (argued)

      For Respondent:

      Mike McGrath, Montana Attorney General, Mark W. Mattioli, Assistant
Montana Attorney General (argued), Helena, Montana; Chris Christensen,
Pondera County Attorney, Conrad, Montana

Heard: April 11, 2003
Submitted: April 11, 2003
Decided: June 23, 2003

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     The Appellant, Eugene Spotted Eagle, was charged with operating a motor vehicle under the influence of alcohol, a felony, in the District Court for the Ninth Judicial District in Pondera County.  He plead guilty to the charges and reserved the right to appeal the District Court's denial of his motion to dismiss, in which he argued that his four prior uncounselled  tribal court DUI convictions could not be used to enhance his sentence.  We affirm the order of the District Court which denied Spotted Eagle's motion to dismiss.

¶2     The sole issue on appeal is whether valid uncounselled tribal court DUI convictions may be used to enhance a state DUI charge to a felony in a Montana court.

FACTUAL AND PROCEDURAL BACKGROUND

¶3     At approximately 10:30 p.m. on September 8, 2001, the Pondera County Sheriff's Department responded to a report that a pickup truck was parked on Dupuyer Road, west of Conrad, Montana.  The Defendant, Eugene Spotted Eagle, was found slumped against the driver's door of the vehicle.  The vehicle's engine was turned off and the keys were found in the ignition.  Spotted Eagle submitted to a preliminary alcohol screening test that indicated he was under the influence of alcohol.  He was taken to the Conrad police station where he refused to submit to a breath test.

¶4     On September 19, 2001, he was charged with operation of a motor vehicle under the influence of alcohol in violation of § 61-8-401(1)(a), MCA, in the Ninth Judicial District Court for Pondera County.  Previously, Spotted Eagle had been convicted and jailed for

2

driving under the influence of alcohol four times in Blackfeet tribal court. Consequently, the State prosecuted the offense as a felony pursuant to § 61-8-731, MCA.

¶5 Section 61-8-731, MCA, provides that a defendant who is convicted of a fourth or subsequent DUI is guilty of a felony rather than a misdemeanor. The statute provides the sentencing options for a felony DUI. Section 61-8-734(1), MCA, provides that a conviction from a federally recognized Indian tribe may be used to enhance a DUI sentence.

¶6 Spotted Eagle filed a motion to dismiss the felony charges and alleged that the four previous tribal convictions could not be used to enhance the charges against him in a Montana court because they were obtained in violation of his Sixth Amendment right to counsel. He argued that, while he was represented by an "advocate" in the tribal court, representation by an advocate did not satisfy the right to counsel because advocates were not attorneys. Moreover, an affidavit filed with the District Court indicated that he did not waive the right to counsel. Consequently, he argued that those convictions could not be considered by the District Court. He further maintained that § 61-8-731, MCA, violated his right to due process because it is unconstitutionally vague--an argument not pursued on appeal.

¶7 In response, the State argued that the Blackfeet tribal court system provided Spotted Eagle with a pre-arraignment consultation by a "defender" (sometimes also referred to as an "advocate") and that the tribal court convictions were conducted in accordance with the Indian Civil Rights Act (ICRA). A defender is trained by the Blackfeet tribal court to advise a defendant of possible consequences, penalties, and his or her rights under the ICRA. The State maintained Spotted Eagle was afforded all of the rights available pursuant to the ICRA

3

and Blackfeet tribal code. Therefore, Montana was required to recognize those convictions. It further argued that § 61-8-731(1), MCA, was not void for vagueness.

¶8      The District Court concluded that neither the Blackfeet tribal code, nor the ICRA provided an absolute right to counsel in criminal proceedings, and held that the tribal DUI convictions were valid. The trial court factually distinguished *United States v. Ant* (9th Cir. 1989), 822 F.2d 1389, a case relied upon by Spotted Eagle. The District Court noted that in *Ant* the tribal convictions were used by the prosecution to prove the accused's guilt of the charges at issue and that the appellate court found irregularities in the procedure leading to Ant's tribal convictions. As regards Spotted Eagle's tribal court convictions, the court concluded that there were no irregularities--a point Spotted Eagle concedes on appeal. Furthermore, Spotted Eagle's Blackfeet convictions were not used to prove that he was guilty of the state DUI charge at bar. Spotted Eagle did not and does not, here, maintain his actual innocence of the underlying tribal court convictions.

¶9      Finally, the District Court noted that indirectly imposing Montana's constitutional right to counsel on tribal courts was contrary to Montana judicial policy. Consequently, the court denied Spotted Eagle's motion to dismiss and concluded that Montana judicial policy permitted those convictions to be used in state court to enhance the penalty for a DUI.

¶10     Subsequently, Spotted Eagle entered a guilty plea which was conditioned upon this Court's disposition of his motion to dismiss on appeal. Pursuant to the plea agreement, Spotted Eagle was committed to the Montana Department of Corrections for thirteen months,

4

to be suspended upon successful completion of an approved alcohol treatment plan. He also received a five-year suspended sentence subject to parole and probation restrictions.

## STANDARD OF REVIEW

¶11 Whether a prior conviction can be used to enhance a criminal sentence is a question of law. *State v. Ailport*, 1998 MT 315, ¶ 6, 292 Mont. 172, ¶ 6, 970 P.2d 1044, ¶ 6. We review a district court's conclusions of law to determine whether its conclusions are correct. *Ailport*, ¶ 6.

## DISCUSSION

¶12 May valid uncounselled tribal court DUI convictions be used to enhance a state DUI charge to a felony in a Montana court?

¶13 Spotted Eagle contends that the District Court was incorrect when it concluded that his tribal convictions could be used to enhance the State's DUI charge against him to a felony. He maintains that he was not represented by counsel in the Blackfeet tribal court. Therefore, those convictions violate his United States and Montana constitutional right to counsel.

¶14 The State responds that the Blackfeet tribal code, the ICRA, and Blackfeet cultural norms do not guarantee the assistance of counsel in criminal proceedings. It argues that the fundamental principles of tribal sovereignty and comity require the District Court to recognize the legitimacy of the tribal convictions in this case. To do otherwise would undermine the sovereignty of the Blackfeet court system and contradict Montana judicial policy.

5

¶15    A prior conviction is presumptively valid.  Once the fact of a prior conviction is established, the defendant bears the burden of producing direct evidence that the prior conviction was invalid.  *State v. Okland* (1997), 283 Mont. 10, 18, 941 P.2d 431, 436.  The Sixth Amendment of the United States Constitution and Article II, Section 24, of the Montana Constitution, guarantee indigent defendants the right to representation by court-appointed counsel when facing criminal charges in federal or state court.  *Okland*, 283 Mont. at 14, 941 P.2d at 433.

¶16    In *Scott v. Illinois* (1979), 440 U.S. 367, 372-74, 99. S.Ct.1158, 1162, 59 L.Ed.2d 383, the U.S. Supreme Court held that there is no Sixth Amendment right to counsel in a misdemeanor criminal proceeding where the defendant is not actually sentenced to imprisonment.  The Court noted that the Sixth Amendment right to counsel applied to state proceedings pursuant to the Fourteenth Amendment.  *Scott*, 440 U.S. at 371, 99 S.Ct. at 1161.  It further concluded that an uncounselled conviction that resulted in imprisonment, violated the Sixth Amendment and was invalid.  *Scott*, 440 U.S. at 373-74, 99 S.Ct. at 1162.

¶17    One year later, in *Baldasar v. Illinois* (1980), 446 U.S. 222, 227-28, 100 S.Ct. 1585, 1587-88, 64 L.Ed.2d 169, a majority of the Court held that a prior uncounselled misdemeanor conviction, constitutional under *Scott*, could nevertheless not be collaterally used to convert a second misdemeanor conviction into a felony under the applicable Illinois sentencing enhancement statute.  The *per curiam* Opinion in *Baldasar* stated no rationale for the result, referring only to the "reasons stated in the concurring opinion."  *Baldasar*, 446 U.S. at 224, 100 S.Ct. at 1586.

6

¶18 However, in *Nichols v. United States* (1994), 511 U.S. 738, 114 S.Ct. 1921, 128 L.Ed.2d 745, the Supreme Court reversed course. The *Nichols* majority held that a valid uncounselled conviction may be relied upon to enhance the sentence for a subsequent offense. The Court reasoned that an enhancement statute only penalizes the defendant for the subject offense and does not change the penalty imposed for the prior conviction. *Nichols*, 511 U.S. at 746-47, 114 S.Ct. at 1927. The Court remarked that judges traditionally consider prior convictions and prior criminal behavior when sentencing a defendant for criminal convictions. *Nichols*, 511 U.S. at 747, 114 S.Ct. at 1927-28. Sentence enhancement was cited as consistent with that judicial policy.

¶19 In *Nichols*, the defendant was not sentenced to a prison term in the prior uncounselled conviction and, therefore, the right to counsel was not implicated:

> Accordingly we hold, consistent with the Sixth and Fourteenth Amendments of the Constitution, that an uncounselled misdemeanor conviction, valid under *Scott* because no prison term was imposed, is also valid when used to enhance punishment at a subsequent conviction.

*Nichols*, 511 U.S. at 748-49, 114 S.Ct. at 1928. Notably, the Court overruled *Baldasar*. *Nichols*, 511 U.S. at 746-47, 114 S.Ct. at 1927.

¶20 In *State v. Hansen* (1995), 273 Mont. 321, 903 P.2d 194, this Court relied upon *Nichols* and concluded that a valid prior conviction may be used to convert subsequent charges from a misdemeanor to a felony. The defendant in that case had been convicted of domestic abuse on two prior occasions without being represented by counsel. In both cases his sentence was suspended. He was convicted a third time for domestic abuse and the state

7

charged him with a felony pursuant to Montana statute. The district court dismissed the felony charge and held that prior convictions could not be used because the defendant had not waived his right to counsel in those cases. We reversed the court and held that there was no retroactive right to counsel for a prior misdemeanor conviction simply because that conviction may ultimately contribute to imprisonment or felony charges. *Hansen*, 273 Mont. at 325, 903 P.2d at 197. Significantly, we relied upon *Nichols* when we concluded that an uncounselled conviction valid pursuant to *Scott* could be used to enhance a subsequent sentence. *Hansen*, 273 Mont. at 325, 903 P.2d at 197.

¶21 According to *Scott*, an uncounselled misdemeanor conviction is valid in state and federal court, so long as the defendant is not actually imprisoned. It is important to note that the defendant in *Scott* was convicted in a court subject to the Sixth Amendment. In essence, a federal or state conviction obtained contrary to *Scott* is invalid at its inception because it violates the Sixth Amendment right to counsel. *Nichols* stands for the proposition that a conviction valid pursuant to *Scott* may also be used to enhance a sentence for a subsequent conviction. Thus, whether a prior uncounselled conviction may be used to enhance a subsequent misdemeanor to a felony turns on whether that conviction was valid at its inception.

¶22 The record here indicates that Spotted Eagle's uncounselled tribal DUI convictions resulted in some jail time. Consequently, had those prior DUI convictions been obtained in a federal or state court, they would be invalid at their inception pursuant to *Scott*. However, Spotted Eagle's convictions were obtained in the Blackfeet tribal court and, accordingly, we

must, of necessity, discuss whether uncounselled convictions that result in jail time are valid or invalid at inception in that court. To that question we now turn.

¶23 Indian tribes retained certain "'*inherent powers of limited sovereignty which has never been extinguished.*'" *United States v. Wheeler* (1978), 435 U.S. 313, 322, 98 S.Ct. 1079, 1085, 55 L.Ed. 2d 303 (citation omitted). Included within this retained sovereignty, tribes have jurisdiction over crimes committed on tribal lands by one Indian against another Indian. *Wheeler*, 435 U.S. at 322, 98 S.Ct. at 1085.

¶24 While Native Americans are citizens of the United States, the United States Constitution does not apply to Indian tribes. *See, Talton v. Mayes* (1896), 163 U.S. 376, 384, 16 S.Ct. 986, 989, 41 L.Ed. 196; *see also*, Felix Cohen, *Handbook of Federal Indian Law* 181 (Five Rings Press 1988)(1941). For that reason, Congress, through its plenary authority over the Indian tribes, afforded many of the protections of the Bill of Rights to Native Americans when it adopted the ICRA. However, the Sixth Amendment right to counsel was not provided for in the ICRA. Indeed, unless otherwise provided for by tribal law, a defendant facing criminal charges in tribal court is only entitled to counsel at his or her own expense. 25 U.S.C. § 1302(6).

¶25 The effect of the ICRA's omission of Sixth Amendment right to counsel was crystallized in *Settler v. Lameer* (9th Cir. 1974), 507 F.2d 231. In that case, the court held that the Sixth Amendment right to counsel in federal proceedings applied to the states through the Fourteenth Amendment. However, it concluded that the Sixth Amendment does not apply to the quasi-sovereign Indian tribes because they are not "states" subject to the

9

Fourteenth Amendment. *Settler*, 507 F.2d at 241. Therefore, a criminal defendant has no absolute right to counsel in tribal court unless provided for by his or her tribe.

¶26 The Blackfeet have elected not to guarantee criminal defendants counsel. Because the right to counsel is not guaranteed in Blackfeet tribal court, *Scott* and *Nichols* have limited applicability to the issue before this Court--i.e. whether a valid uncounselled conviction obtained in a tribal court may be relied upon to enhance criminal charges in state court. The resolution of this issue, however, implicates other overlapping issues, namely, an individual's right to counsel in state court, the absence of that guarantee in tribal court, and the relationship between Montana and the sovereign Indian nations found within Montana's borders.

¶27 Spotted Eagle asserts that the issue has been resolved by the Ninth Circuit's decision in *United States v. Ant* (9th Cir. 1989), 882 F.2d 1389. However, that case is distinguishable as noted by the District Court. The issue in *Ant* was whether an uncounselled guilty plea in tribal court could be used to establish guilt in a subsequent federal prosecution arising out of the same criminal acts. *Ant*, 882 F.2d at 1391. The court concluded that the defendant's guilty plea in tribal court was constitutionally infirm because the defendant was not informed that his plea could be used against him in federal court. *Ant*, 882 F.2d at 1393. The court stated:

> [I]n *Baldasar v. Illinois*, 466 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980)(per curium), the defendant's prior uncounselled misdemeanor conviction could not be used under Illinois' enhanced penalty statute to convert a subsequent misdemeanor into a felony with a prison term.

10

*Ant*, 882 F.2d at 1394.[1]

¶28    In the present case, there was nothing irregular about Spotted Eagle's tribal convictions and those convictions were only considered for the purpose of sentencing in the State's case and not for establishing guilt.    Furthermore, *Ant* relies upon *Baldasar*, a case expressly overruled by *Nichols*, 511 U.S. at 747, 114 S.Ct. at 1927.   Consequently, *Ant* is not persuasive.

¶29    Additionally, this conclusion is buttressed by *United States v. Benally* (10th Cir. 1985), 756 F.2d 773.  In that case the Tenth Circuit Court of Appeals contemplated whether uncounselled misdemeanor tribal convictions could be considered when sentencing an Indian defendant in federal court.    The trial court considered the defendant's previous tribal convictions despite the fact he was not represented by counsel and was imprisoned for those convictions.  On appeal the defendant argued that it was improper for the court to consider those convictions because they violated his Sixth Amendment right to counsel in federal

---

[1] In light of *Nichols*, the continued viability of *Ant* is questionable, at best. With the exception of the Ninth Circuit, our research has uncovered no post-*Nichols* federal case that questions the use of an initially valid  uncounselled conviction to enhance a subsequent federal sentence.    Even the Ninth Circuit's jurisprudence demonstrates considerable confusion. *Compare United States v. Brady* (9th Cir.1991), 928 F.2d 844, 854; *United States v. Hookano* (9th Cir.1992), 957 F.2d 714, 716; *United States v. Devine*, No. 95-30014, 1996 WL 5339 *1 (9th Cir. Jan.5, 1996); with *United States v. Smith*, No. 93-30435, 1994 WL 424659 *1 (9th Cir. Aug.15, 1994) (rejecting defendant's argument that the district court "improperly considered his prior, uncounselled tribal convictions when imposing sentence, thereby violating his Sixth Amendment rights," holding that "Sixth Amendment is not violated when court enhances sentence with a prior, uncounselled, misdemeanor conviction" valid at its inception); *United States v. Early*, No. 94-10543, 1996 WL 337206 *2 (9th Cir. June 18, 1996) (recognizing that after *Nichols*, an "uncounselled misdemeanor conviction, valid under *Scott* . . ., is also valid when used to enhance punishment at a subsequent conviction," but nevertheless suggesting, without deciding, that an enhancement based on an uncounselled tribal court conviction resulting in imprisonment might be unconstitutional).

11

court. The Tenth Circuit concluded that the Sixth Amendment did not apply to tribal proceedings and stated:

> The rationale is that the Indian tribes are quasi-sovereign nations and that the protections of the Constitution do not apply to tribal actions brought against Indians in tribal courts. In sentencing an Indian the court may consider the defendant's uncounselled tribal convictions.

*Benally*, 756 F.2d at 779 (citation omitted).

¶30 Although the *Benally* court provides little explanation for its holding, the result is consistent with Montana judicial policy, the ICRA, and tribal sovereignty. Montana judicial policy avoids interfering with the tribal courts and the respective tribe's sovereignty. *See Agri West v. Koyama Farms, Inc.* (1997), 281 Mont. 167, 173, 933 P.2d 808, 812. This Court treats tribal court judgments with the same deference as those of foreign sovereigns as a matter of comity. *Wippert v. Blackfeet Tribe* (1982), 201 Mont. 299, 304, 654 P.2d 512, 515. In most instances, comity requires this Court to give full effect to the judgments of foreign sovereigns. *See* Restatement (Second) of Conflict of Laws § 98 (1971). Comity requires that a court give full effect to the valid judgments of a foreign jurisdiction according to that sovereign's laws, not the Sixth Amendment standard that applies to proceedings in Montana. *See State v. Myer* (Wash. 1980), 613 P.2d 132, 137.

¶31 To disregard a valid tribal court conviction would imply that Montana only recognizes the Blackfeet Tribe's right to self-government until it conflicts with Montana law. Moreover, it would suggest that Montana recognizes the legitimacy of the judgments of the tribal courts to the extent that the procedures mirror Montana procedure. Such a position

12

would contradict the judicial policy of this state and indirectly undermine the sovereignty of the Blackfeet Tribe.

¶32 Moreover, one commentator also suggests that in addition to doing a disservice to tribal sovereignty, the practice of failing to fully recognize convictions from individual tribal courts also risks imposing inappropriately sweeping standards upon diverse tribal governments, institutions and cultures--a criticism frequently leveled by Indian tribes themselves against Congress's adoption of the ICRA. This same commentator observes, too, that while many tribes do attempt to provide counsel to indigent criminal defendants, a recurrent impediment is insufficient funding and that to mandate such a requirement would impose an insurmountable financial burden on many tribal governments. Vincent C. Milani, *The Right to Counsel in Native American Tribal Courts: Tribal Sovereignty and Congressional Control*, 31 Am. Crim. L. Rev. 1279, 1295-97 (Summer 1994).

¶33 In summary, the ICRA enabled the tribes, as quasi-sovereign nations, to adopt their own tribal court and criminal justice system. Congress, through its enactment of the ICRA specifically indicated that the Sixth Amendment does not apply to proceedings in tribal courts. Importantly, the Blackfeet Tribe chooses not to guarantee the right to counsel in tribal court for cultural, practical, and, presumably, financial reasons. Therefore, an uncounselled tribal conviction does not violate the Blackfeet tribal code and is valid in the tribal court. The parties concede the fact that Spotted Eagle's tribal convictions are valid tribal convictions pursuant to Blackfeet law. In other words, the parties concede that those

13

convictions were valid at their inception. Nothing of record indicates that the proceedings were fundamentally unfair or that Spotted Eagle was in fact innocent of the tribal charges.

¶34    Therefore, we hold that Spotted Eagle's uncounselled tribal court convictions were valid in their inception pursuant to Blackfeet law and the ICRA. Furthermore, pursuant to the comity afforded tribal court judgments, the ICRA, and our deference to tribal sovereignty, those convictions were properly considered by the District Court pursuant to § 61-8-731, MCA, and are available to enhance Spotted Eagle's state DUI conviction from a misdemeanor to a felony.

¶35    The judgment of the District Court is affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ JIM REGNIER

14

Justice W. William Leaphart dissenting.

¶36    I dissent. In true oxymoronic fashion, our Court has said to Mr. Spotted Eagle, "Out of deference to your Tribe, we accord you fewer protections than guaranteed to individual citizens by the Montana Constitution."

¶37    Any citizen of the State of Montana with prior non-tribal, uncounselled convictions for DUI would not be subject to a felony prosecution on the fourth offense. *See State v. Okland* (1997), 283 Mont. 10, 941 P.2d 431. Here, since Mr. Spotted Eagle's prior convictions were uncounselled tribal convictions, the majority concludes that, in order to honor tribal sovereignty, we must decline to afford Mr. Spotted Eagle, a member of the Blackfeet Tribe, the rights and protections guaranteed to all Montana citizens.

¶38    The Court reasons that since the tribal convictions were valid at their inception, we must, in the interests of comity, not indirectly undermine the sovereignty of the Blackfeet Tribe. I submit that a refusal to count the tribal convictions would no more undermine tribal sovereignty than our ruling in *State v. Lynch,* 1998 MT 308, 292 Mont. 144, 969 P.2d 920, undermined the sovereignty of the State of Nevada or the federal government. In Lynch's trial for homicide, the State proposed to use wiretap evidence obtained in Nevada pursuant to an order from a Nevada district court. Lynch sought to suppress the wiretap evidence as being in violation of Montana law. The Montana district court denied the motion and allowed the wiretap evidence. Lynch was convicted and appealed to this Court. In reversing, we reasoned that it is settled law in Montana that non-consensual wiretapping is not permitted.

16

> Therefore, under the *Beach* rule, evidence obtained from wiretaps is, likewise, not admissible in this State's courts notwithstanding that the evidence was obtained lawfully in a sister jurisdiction. As in *Beach*, by moving to suppress the Nevada wiretap evidence, Lynch sought to take advantage of an exclusionary remedy based upon Montana evidence law. Since Lynch is being tried in Montana for crimes allegedly committed in this State he, like Beach, is entitled to the fullest protection of Montana law when appearing in its courts. The application of Montana law requires that the Nevada wiretap evidence and any evidence flowing therefrom be suppressed.

*Lynch,* ¶ 22.

¶39    Thus, despite the fact that the wiretap was judicially authorized in Nevada and therefore, valid at its inception, and regardless of the fact that the wiretap apparently complied with both Nevada and federal law, Lynch was entitled to the fullest protection of Montana's more restrictive law when appearing in its courts.  I would hold that Mr. Spotted Eagle is entitled to no less protection when he appears in Montana state courts.  It is settled law in Montana that Article II, Section 24, of the Montana Constitution guarantees indigent defendants the right to representation and that, without a waiver of counsel, an uncounselled conviction for DUI may not be used to increase a fourth DUI offense to felony status. *Okland*, 283 Mont. at 14-15, 941 P.2d at 433-34.   Uncounselled convictions in violation of Article II, Section 24, of the Montana Constitution are no more admissible in Montana than non-consensual wiretaps evidence in violation of the right of privacy, Article II, Section 10, Montana Constitution.

¶40    The Court states that Spotted Eagle's convictions "were only considered for the purpose of sentencing in the State's case and not for establishing guilt." I disagree. Felony DUI is a different offense than misdemeanor DUI. In order to prove a defendant guilty of

17

felony DUI, the State must prove that he or she had at least three prior DUIs. Section 61-8-731, MCA. Contrary to the Court's characterization, prior convictions are more than a mere sentencing factor. The level of offense is not determined retrospectively at sentencing. Prior to any sentencing, Spotted Eagle was charged with felony DUI, and he was convicted of felony DUI. A defendant can only be sentenced for an offense of which he or she has been convicted. The State, having charged felony DUI, had to present proof of prior DUI convictions in order to "establish guilt" of felony DUI.

¶41    I would reverse and grant Mr. Spotted Eagle's motion to dismiss.


/S/ W. WILLIAM LEAPHART

18