**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 26, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff–Appellant,

v.

ADAM SHAVANAUX,

      Defendant–Appellee.

No. 10-4178

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:10-CR-00234-TC-1)**

Richard A. Friedman, Department of Justice, Appellate Section, Criminal Division, Washington, D.C. (Charlie Christensen and Trina A. Higgins, Office of the United States Attorney, District of Utah, Salt Lake City, Utah; Lanny A. Breuer and Gregory D. Andres, Department of Justice, Criminal Division, Washington, DC, with him on the briefs), for the Plaintiff-Appellant.

Benjamin C. McMurray (Steven B. Killpack and Scott Keith Wilson with him on the briefs), Office of the Federal Public Defender, District of Utah, Salt Lake City, Utah, for the Defendant-Appellee.

Before **KELLY**, **ANDERSON**, and **LUCERO**, Circuit Judges.

**LUCERO**, Circuit Judge.

We consider the government's appeal from the dismissal of Adam Shavanaux's indictment under 18 U.S.C. § 117(a) for domestic assault by a habitual offender. Exercising jurisdiction under 18 U.S.C. § 3731 and 28 U.S.C. § 1291, we reverse and remand for proceedings consistent with this opinion.

# I

Shavanaux is a member of the Ute Indian Tribe and resides on the Uintah and Ouray Reservations within Utah. In 2010, Shavanaux was indicted under 18 U.S.C. § 117 for assaulting his domestic partner after having been convicted of assaulting a domestic partner on two prior occasions. 18 U.S.C. § 117(a) provides that:

> (a) In general. – Any person who commits a domestic assault within the special maritime and territorial jurisdiction of the United States or Indian country and who has a final conviction on at least 2 separate prior occasions in Federal, State, or Indian tribal court proceedings for offenses that would be, if subject to Federal jurisdiction –
>> (1) any assault, sexual abuse, or serious violent felony against a spouse or intimate partner or
>> (2) an offense under chapter 110A [domestic violence and stalking offenses prescribed by 18 U.S.C. §§ 2261 (interstate domestic violence), 2261A (interstate stalking), 2262 (interstate violation of a protection order)],
> shall be fined under this title, imprisoned for a term of not more than 5 years, or both, except that if substantial bodily injury results from violation under this section, the offender shall be imprisoned for a term of not more than 10 years.

Shavanaux's two prior convictions were in Ute tribal court. In neither of the tribal prosecutions did Shavanaux have the right to appointed counsel provided at the Tribe's

expense.  Ute Indian R. Crim. P. 3(1)(b).[1]  Shavanaux established by affidavits filed in

the federal proceedings that he was not represented by counsel and could not afford an

attorney in his previous tribal court prosecutions.  He did, however, exercise his right to

be represented by a lay advocate at his own expense.

Shavanaux filed a motion to dismiss the indictment asserting that the Sixth

Amendment and the Due Process Clause of the Fifth Amendment of the United States

Constitution forbid reliance on his uncounseled tribal misdemeanor convictions to

support a charge under 18 U.S.C. § 117(a).  The district court determined that the

Constitution does not apply to tribal court prosecutions and therefore Shavanaux did not

have Sixth Amendment or due process rights to appointed counsel in tribal court.  It

found that Shavanaux's tribal prosecutions complied with the applicable provisions of the

Indian Civil Rights Act, 25 U.S.C. §§ 1301-1303 ("ICRA").  Accordingly, the district

court concluded that "Shavanaux's two convictions for aggravated assault do not violate

either the Indian Civil Rights Act or the United States Constitution."

However, the district court ruled that use of those otherwise-valid tribal court

convictions in a § 117(a) prosecution would violate Shavanaux's Sixth

Amendment right to counsel.[2]

---

[1] Available at http://www.narf.org/nill/Codes/uteuocode/utebodyt12.htm.

[2] The district court relied upon another district court that reached the same conclusion.  United States v. Cavanaugh, 680 F. Supp. 2d 1062 (D.N.D. 2009), rev'd No. 10-1154, 2011 WL 2623314 (8th Cir. July 8, 2011).

## II

Dismissal of the indictment was predicated on the grounds that a prosecution under § 117(a) would violate the Sixth Amendment. United States v. Shavanaux, 2010 WL 4038839 at *1 (D. Utah, Oct. 14, 2010) (Slip. Op.) Shavanaux argues that the use of his tribal convictions would also violate due process and the equal protection component of the Fifth Amendment's Due Process Clause.[3] "We review challenges to the constitutionality of a statute de novo." United States v. Dorris, 236 F.3d 582, 584 (10th Cir. 2000).

In resolving whether prosecution under § 117(a) would violate the Sixth Amendment, it is first necessary to consider the relationship between Indian tribes and the United States. "The Bill of Rights does not apply to Indian tribes." Plains Commerce Bank v. Long Family Land & Cattle Co., 554 U.S. 316, 337 (2008) (citing Talton v. Mayes, 163 U.S. 376, 382-85 (1896)); see also Nevada v. Hicks, 533 U.S. 353, 383-84 (2001); Duro v. Reina, 495 U.S. 676, 693 (1990), superseded in other respects by statute, 25 U.S.C. § 1301.[4] This is so because:

---

[3] We treat Shavanaux's arguments as alternative bases for affirming the district court's dismissal of the indictment. See United Fire & Cas. Co. v. Boulder Plaza Residential, LLC, 633 F.3d 951, 958 (10th Cir. 2011) (noting that an "appellee may, without filing a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court." (quotation omitted)).

[4] We must, of course, decline Shavanaux's initiation to overrule or ignore Talton and its progeny.

-4-

the Indian nations ha[ve] always been considered as distinct, independent political communities. . . . The constitution, by declaring treaties already made, as well as those to be made, to be the supreme law of the land, has adopted and sanctioned the previous treaties with the Indian nations, and consequently admits their rank among those powers who are capable of making treaties.

Talton, 163 U.S. at 383 (quoting Worcester v. Georgia, 31 U.S. (6 Pet.) 515, 559 (1832)). Although the Court has moved away from Worcester's "platonic notions of Indian sovereignty," McClanahan v. State Tax Comm'n of Ariz., 411 U.S. 164, 172 (1973), tribes "still possess those aspects of sovereignty not withdrawn by treaty or statute, or by implication as a result of their dependent status." United States v. Wheeler, 435 U.S. 313, 323 (1978), superseded in other respects by statute, 25 U.S.C. §§ 1301-1303. One of the attributes of sovereignty which Indian tribes possess is the "power to prescribe and enforce internal criminal laws." Wheeler. at 326.

The Talton Court acknowledged as much and reasoned "[i]t follows that, as the powers of local self-government enjoyed by the Cherokee Nation existed prior to the Constitution, they are not operated upon by the [F]ifth [A]mendment, which . . . had for its sole object to control the powers conferred by the Constitution on the national government." 163 U.S. at 384. Any appeal to the Fourteenth Amendment is similarly unavailing because, by its own terms, it applies only to the states. See U.S. Const. Amend. XIV. Thus, rather than being subject to the United States Constitution, the tribal exercise of inherent power is constrained only by "the supreme legislative authority of the United States." Talton, 163 U.S. at 384; see also Santa Clara Pueblo v. Martinez, 436

U.S. 49, 56-57 (1978) (Congress has plenary power over Indian affairs and exercised this power by passing ICRA).

Because the Bill of Rights does not constrain Indian tribes, Shavanaux's prior uncounseled tribal convictions could not violate the Sixth Amendment. Although a tribal prosecution may not conform to the requirements of the Bill of Rights, deviation from the Constitution does not render the resulting conviction constitutionally infirm.

In reaching this conclusion, we recognize we are at odds with the Ninth Circuit. In United States v. Ant, 882 F.2d 1389, 1393 (9th Cir. 1989), the court held that an uncounseled tribal conviction was "constitutionally infirm." Relying upon Burgett v. Texas, 389 U.S. 109, 115 (1967), the Ninth Circuit determined that the admission of such a prior conviction was "inherently prejudicial" and thus unconstitutional. Ant, 882 F.2d at 1393, 1396.

Ant overlooks the Talton line of cases. We therefore disagree with Ant's threshold determination that an uncounseled tribal conviction is constitutionally infirm. Shavanaux's rights under the Sixth Amendment were not violated by the tribal prosecutions. For this reason Burgett, 389 U.S. at 115, and United States v. Custis, 511 U.S. 485 (1994), are inapposite. Use of tribal convictions in a subsequent prosecution cannot violate "anew" the Sixth Amendment, see Burgett, 389 U.S. at 115, because the

Sixth Amendment was never violated in the first instance.[5]

We reiterate that because the Bill of Rights does not apply to Indian tribes, tribal convictions cannot violate the Sixth Amendment. Shavanaux's convictions complied with ICRA's right to counsel provision, 25 U.S.C. § 1302(a)(6). Thus, use of Shavanaux's prior convictions in a prosecution under § 117(a) would not violate the Sixth Amendment, anew or otherwise.

## III

## A

The next issue is whether under the Due Process Clause of the Fifth Amendment, prior convictions which were obtained through procedures which did not comply with, but also did not violate, the Constitution may be introduced in subsequent prosecutions in federal court.

Again, our analysis turns on the nature of tribal sovereignty. "The condition of the Indians in relation to the United States is perhaps unlike that of any other [relationship] in existence." Cherokee Nation v. Georgia, 30 U.S. (5 Pet.) 1, 16 (1831). Indian tribes are neither states of the union, nor foreign states exercising perfect sovereignty. Id. at 16-17. They are instead "domestic dependent nations," id. at 17, which, though enjoying the protection of the United States, continue to exercise "limited sovereignty." Wheeler, 435

---

[5] For the same reason we find the Eighth Circuit's analysis of Sixth Amendment doctrine in United Sates v. Cavanaugh, No. 10-1154, 2011 WL 2623314 (8th Cir. July 8, 2011), unnecessary.

U.S. at 322; see also Worcester, 31 U.S. at 561.

Although Indian tribes are not foreign states, for the purposes of our analysis they share some important characteristics with foreign states insofar as tribes are sovereigns to whom the Bill of Rights does not apply. See supra, Part II. Indeed, in the due process context, federal courts have analogized Indian tribes to foreign states in considering whether to recognize the civil judgments of tribal courts. Courts analyze the recognition of tribal judgment under principles of comity derived from foreign relations law. See Wilson v. Marchington, 127 F.3d 805, 810 (9th Cir. 1997); see also Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 15 (1987) (extending comity to tribal courts); MacArthur v. San Juan County, 309 F.3d 1216, 1225 (10th Cir. 2002) (citing Wilson); Burrell v. Armijo, 456 F.3d 1159, 1168 (10th Cir. 2006) (citing Wilson); State v. Spotted Eagle, 71 P.3d 1239, 1245-1246 (Mont. 2003) (analogizing tribes to foreign sovereigns and applying principles of comity).

As the Wilson court observed:

> Comity does not require that a tribe utilize judicial procedures identical to those used in the United States Courts. Foreign-law notions are not per se disharmonious with due process by reason of their divergence from the common-law notions of procedure. Indeed, Hilton rejected challenges to a judgment based on lack of adequate cross-examination and unsworn testimony. Federal courts must also be careful to respect tribal jurisprudence along with the special customs and practical limitations of tribal court systems. Extending comity to tribal judgments is not an invitation for the federal courts to exercise unnecessary judicial paternalism in derogation of tribal self-governance.

Id. at 810 (citing Hilton v. Guyot, 159 U.S. 113, 205 (1895)) (other citations and

quotations omitted).

In assessing whether to recognize tribal judgments under principles of comity, both this court and the Ninth Circuit have turned to the criteria enumerated in the Restatement (Third) of Foreign Relations § 482 (1987) ("the Restatement"). See Burrell, 456 F.3d at 1167; MacArthur, 309 F.3d at 1225; Wilson, 127 F.3d at 810-11. The Restatement lists two grounds upon which a court in the United States must refuse to recognize the judgment of a foreign court: (1) "the judgment was rendered under a judicial system that does not provide impartial tribunals or procedures compatible with due process of law"; or (2) "the court that rendered the judgment did not have jurisdiction over the defendant in accordance with the law of the rendering state and with the rules set forth in § 421." Restatement (Third) of Foreign Relations, § 482(1).

We find that neither of the Restatement's two mandatory factors for rejecting a foreign judgment has been met in this case. First, Shavanaux's tribal convictions were obtained through "procedures compatible with due process of law." Second, Shavanaux does not contest that the tribal court properly exercised jurisdiction over him.

Our determination that the Ute tribal court procedures are "compatible with due process of law" flows from the compliance of the Ute courts with the requirements of ICRA. United States v. Shavanaux, 2010 WL 4038839 at *1 (D. Utah, Oct. 14, 2010)

-9-

(Slip. Op.) .[6] Even though the "Bill of Rights and the Fourteenth Amendment do not of their own force apply to Indian tribes," Hicks, 533 U.S. at 383-84, ICRA does apply a number of identical or analogous safeguards to Indian tribes, see 25 U.S.C. § 1302. However, ICRA does not require Indian tribes to provide counsel at tribal expense to criminal defendants. ICRA provides that a defendant may "at his own expense . . . have the assistance of counsel for his defense." 25 U.S.C. § 1302(a)(6) (emphasis added). Shavanaux does not claim that his tribal convictions failed to comply with the requirements of ICRA.

This reasoning is consistent with the Montana Supreme Court's conclusion in State v. Spotted Eagle, 71 P.3d 1239, 1245-1246 (Mont. 2003). In Spotted Eagle, the court held that, under principles of comity, Montana state courts must recognize uncounseled tribal convictions which complied with ICRA. The court noted that "[c]omity requires that a court give full effect to the valid judgments of a foreign jurisdiction according to that sovereign's laws, not the Sixth Amendment standard that applied to proceedings [in the court where recognition is sought]."

_____

[6] Although Shavanaux does not contend that his tribal convictions violated ICRA, he does cite to the "problems associated with tribal courts" and the discussion of tribal courts in Cavanaugh, 680 F. Supp. 2d at 1072-73. We reject such generalizations regarding Indian tribes and their courts because, as Worcester counsels us, Indian tribes are "distinct, independent political communities." 31 U.S. at 559 (1832) (emphasis added). Each tribe's judicial system must be assessed on its own merits. Cf. United States v. Swift Hawk, 125 F. Supp. 2d 384, 388 (D.S.D. 2000) (emphasizing the differences in tribal court proceedings among tribes).

The court also observed that "the practice of failing to fully recognize convictions from individual tribal courts also risks imposing inappropriately sweeping standards upon diverse tribal governments, institutions and cultures," which undermines ICRA's objective of allowing tribes to adopt "their own tribal court[s] and criminal justice system[s]." Id. at 1245 (citation omitted).  We find this analysis compelling.

We hold that tribal convictions obtained in compliance with ICRA are necessarily compatible with due process of law.  Unless a tribal conviction has been vacated through habeas proceedings or on other grounds, it constitutes a valid conviction for the purposes of 18 U.S.C. § 117(a) and its use does not violate a defendant's right to due process in a federal prosecution.[7]

**B**

We further note in considering the due process implications of recognizing tribal convictions that federal courts have repeatedly recognized foreign convictions and accepted evidence obtained overseas by foreign law enforcement through means that

---

[7] The treatment of tribal convictions by the United States Sentencing Guidelines § 4A1.2(i) is irrelevant to our due process analysis.  Congress' decision to exclude tribal convictions from criminal history calculation while specifically including them in the recidivist statute of 18 U.S.C. § 117 represents a policy choice, which does not bear upon the constitutional issues in this case.  This exercise of Congress' "plenary power[]" over Indian affairs is consonant with the Constitution.  See United States v. Lara, 541 U.S. 193, 200-04 (2004) (discussing the bounds of Congress' authority in Indian affairs).

deviate from our constitutional protections.[8]

The most analogous situation to the case before us is the use of a foreign conviction as a predicate offense under federal law. In determining whether the use of a prior Japanese conviction as a predicate offense violated due process, the Third Circuit assessed whether such use "comport[ed] with our notions of fundamental fairness." United States v. Small, 333 F.3d 425, 428 (2003), rev'd on other grounds by Small v. United States, 544 U.S. 385 (2005). The Third Circuit held that a prior conviction which met the Restatement criteria did not violate the Due Process Clause. Small, 333 F.3d at 428.

Courts have also permitted the introduction into evidence of prior convictions rendered by courts sitting without juries. Despite the failure of the German justice system to provide a right to a jury trial, the Fourth Circuit held that a German conviction was admissible absent a showing that the "German legal system lacks the procedural protections necessary for a fundamental fairness." United States v. Wilson, 556 F.2d 1177, 1178 (4th Cir. 1977). In United States v. Kole, 164 F.3d 164, 172 (3rd Cir. 1998), the Third Circuit also concluded that the admission into evidence of a non-jury criminal conviction from the Philippines did not violate due process.

_____

[8] Shavanaux contends that that "[i]t is unthinkable that the government would be allowed to introduce evidence of a French or Mexican conviction without first proving that basic protections were afforded the defendant, most importantly Due Process and the right to effective counsel." Yet, as we explain, courts have repeatedly permitted the introduction of foreign convictions. Further, we limit the introduction of tribal convictions to valid convictions which meet the due process requirements of ICRA.

Similarly, this court and others have repeatedly permitted the use at trial of statements made to foreign law enforcement, even though <u>Miranda</u> warnings were not given, absent substantial participation by agents of the United States. <u>See</u> <u>United States v. Mundt</u>, 508 F.2d 904, 906 (10th Cir. 1974); <u>United States v. Welch</u>, 455 F.2d 211, 213 (2d Cir. 1972); <u>United States v. Chavarria</u>, 443 F.2d 904, 905 (9th Cir. 1971); <u>United States v. Nagelberg</u>, 434 F.2d 585, 588 n.1 (2d Cir. 1970); <u>United States v. Conway</u>, 1995 WL 339403, at *3 (10th Cir. June 8, 1995) (unpublished).

The Ninth and Fifth Circuits have permitted the use of evidence obtained overseas by foreign law enforcement, even though the searches and seizures producing that evidence would have violated the Fourth Amendment had they been conducted by United States agents. "The Fourth Amendment exclusionary rule does not apply to foreign searches by foreign officials in enforcement of foreign law, even if those from whom evidence is seized are American citizens." <u>United States v. Rose</u>, 570 F.2d 1358, 1361-62 (9th Cir. 1978); <u>see also</u> <u>United States v. Hawkins</u>, 661 F.2d 436, 455-56 (5th Cir. 1981) ("[T]he general rule is that the Fourth Amendment does not apply to arrests and searches made by foreign authorities in their own country and in enforcement of foreign law.").

In considering the admission of evidence obtained through a search by foreign law enforcement, we have observed that:

> [t]he mere fact that the law of the foreign state differs from the law of the state in which recognition is sought is not enough to make the foreign law inapplicable. . . . Indeed, this Court is reminded of the oft-paraphrased

-13-

advice of St. Ambrose, Catholic bishop of Milan in the fourth century, to St. Augustine. "When you are at Rome, live in the Roman style; when you are elsewhere, live as they do elsewhere."

Brennan v. Univ. of Kan., 451 F.2d 1287, 1288 (10th Cir. 1971). This logic pertains to the instant case as well. Although Shavanaux's tribal convictions were obtained through procedures which did not comply with the Constitution, these convictions did not violate the Constitution. Nor does their subsequent use in federal court.

## C

We conclude that under principles of comity the use of Shavanaux's prior tribal convictions in a subsequent federal prosecution does not violate the Due Process Clause of the Fifth Amendment.

## IV

Shavanaux also argues that § 117 violates the equal protection component of the Due Process Clause. See Schweiker v. Wilson, 450 U.S. 221, 226 n. 6 (1981) ("[T]he Fifth Amendment imposes on the Federal Government the same standard required of state legislation by the Equal Protection Clause of the Fourteenth Amendment."). Shavanaux argues that § 117 singles out Indians for prosecution on the basis of prior uncounseled tribal convictions. Because such disparate treatment "falls along racial lines," Shavanaux claims the statute is unconstitutional.

This claim fails. "Indian" is not a racial classification, but a political one. Morton v. Mancari, 417 U.S. 535, 554, n.24 (1974).

[F]ederal regulation of Indian affairs is not based upon impermissible

-14-

classifications. Rather, such regulation is rooted in the unique status of Indians as a separate people with their own political institutions. Federal regulation of Indian tribes, therefore, is governance of once-sovereign political communities; it is not to be viewed as legislation of a racial group consisting of Indians.

United States v. Antelope, 430 U.S. 641, 646 (1977) (quotation omitted).

Shavanaux is not merely Native American by blood, but is also Indian by virtue of his membership in the Ute tribe. As in Antelope, 430 U.S. at 646, Shavanaux was not subjected to differential treatment in federal court because of his ancestry, but because of his voluntary association with an Indian tribe. Through his tribal membership and residence in Indian country, Shavanaux chose to submit himself to tribal jurisdiction and the criminal procedures of the Ute tribe.

We review for a rational basis "legislation that singles out Indians for particular and special treatment." Mancari, 417 U.S. 535, 554-55 (1974). "As long as the special treatment can be tied rationally to the fulfillment of Congress' unique obligation toward the Indians, such legislative judgments will not be disturbed." Id. at 555.[9] "Equal protection provides that a statute shall not treat similarly situated persons differently unless the dissimilar treatment is rationally related to a legitimate legislative objective." United States v. Weed, 389 F.3d 1060, 1071 (10th Cir. 2004) (quotation omitted).

---

[9] Congress' "unique obligation" flows from the relationship between Indians and the United States, which "resembles that of a ward to his guardian." Cherokee Nation, 30 U.S. at 17. On the basis of Congress's obligations to the Indians, the Supreme Court has upheld federal jurisdiction over crimes by reservation Indians. United States v. Kagama, 118 U.S. 375, 383-84 (1886).

Protecting Indians from domestic violence is unquestionably a legitimate government interest. Congress has found that Indian women are subject to physical and sexual abuse at higher rates than other groups in the United States. <u>See</u> 42 U.S.C. 3796gg-10 (statutory note). The government also cites to evidence that domestic abusers are prone to recidivate. A criminal statute which targets recidivist abusers for enhanced punishment is rationally tied to Congress' legitimate interest and indeed obligation to protect Indians.

In conclusion, to the extent Indians are subject to disparate treatment under § 117, Congress has a rational basis for doing so.

## V

We **REVERSE** the order dismissing the indictment and **REMAND** for further proceedings consistent with this opinion.