**UNITED STATES of America,
Plaintiff,**

v.

**William Tayler KIRKALDIE,
Defendant.**

**No. CR 14–12–GF–BMM.**

United States District Court,
D. Montana,
Great Falls Division.

Signed May 22, 2014.

Jessica Betley, Office of the U.S. Attorney, Great Falls, MT, Lori A. Harper Suek, Office of the U.S. Attorney, Billings, MT, Yvonne G. Laird, Laird Law Office PLLC, Chinook, MT, for Plaintiff.

Evangelo Arvanetes, Federal Defenders of Montana, Great Falls, MT, for Defendant.

## ORDER GRANTING MOTION TO DISMISS INDICTMENT

BRIAN M. MORRIS, District Judge.

Defendant William Tayler Kirkaldie (Kirkaldie) has moved to dismiss the indictment against him. (Doc. 20.) The United States (Government) opposes that motion. (Doc. 24.) The Court heard oral argument on the motion on April 18, 2014. (Doc. 33.)

### Background

The Grand Jury returned a one-count indictment on February 20, 2014, that charged Kirkaldie with domestic abuse by a habitual offender, in violation of 18 U.S.C. § 117(a). (Doc. 1.) Kirkaldie moved to dismiss the indictment on March 17, 2014. (Doc. 20.) The Government responded on March 30, 2014. (Doc. 24.)

Kirkaldie simultaneously reached a plea agreement with the Government, and filed a motion to change his plea on April 10, 2014. (Doc. 26.) Kirkaldie and the Government reached a plea agreement pursuant to FED.R.CRIM.P. 11(a)(2). (Doc. 32 at 2–3.) The plea agreement reserved each party's right to appeal the Court's order on the motion to dismiss. (Doc. 32 at 2–3.)

### Discussion

The Government charged Kirkaldie as a habitual domestic violence offender under 18 U.S.C. § 117(a). (Doc. 1.) Section

117(a) attaches a federal penalty to the commission of a domestic assault when the actor has at least two prior, similar convictions in another jurisdiction. 18 U.S.C. 117(a). The statute addresses specifically the commission of a domestic assault in "Indian country." 18 U.S.C. 117(a). The prior convictions may arise from state, federal, or tribal court. 18 U.S.C. 117(a).

■ The Violence Against Women and Department of Justice Reauthorization Act of 2005 created the new federal offense under section 117(a) as part of the statute's title to promote safety for Indian women. PUB.L. No. 109–162, § 909, 119 Stat. 2960, 3084 (January 5, 2006). Section 117(a) obligates the federal Government to hold repeat domestic violence offenders accountable as part of the "[f]ederal trust responsibility to assist tribal governments in safeguarding the lives of Indian women." PUB.L. No. 109–162, at § 901. The trust responsibility between the federal Government and Indian tribes stems from "the distinctive obligation of trust incumbent upon the [federal] Government in its dealings with these dependent and sometimes exploited people." *Seminole Nation v. United States,* 316 U.S. 286, 296, 62 S.Ct. 1049, 86 L.Ed. 1480 (1942).

"[S]ometimes exploited" seems an understatement. Indian women experience battery at a rate of 23.2 per 1,000, as compared with 8 per 1,000 among Caucasian women. PUB.L. No. 109–162, at §§ 902, 909 (setting forth Congressional findings). Tribal courts generally lack the authority, however, to prosecute non-Indian domestic violence offenders for offenses against Indian women. 41 AM.JUR. 2d *Indians; Native Americans* § 143; *see also Oliphant v. Suquamish Indian Tribe,* 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209 (1978).

An exception slowly evolves. On March 7, 2013, the President signed into law Congress's grant of jurisdiction to tribes over certain domestic violence crimes. PUB.L. No. 113–4, § 904, 127 Stat. 120, 120–124 (Mar. 7, 2013), *codified at* 25 U.S.C. § 1304. Tribes within the United States—although outside of this District—have developed the requisite capacity to prosecute a non-Indian for a domestic violence offense against a tribal member at present. *See* Sari Horwitz, *Arizona tribe set to prosecute first non-Indian under a new law,* WASHINGTON POST, Apr. 18, 2014, *available at* http://www.washingtonpost.com/national/arizona-tribe-set-to-prosecute-first-non-indian-under-a-new-law/2014/04/18/127a202a–bf20–11e3–bcec–b71ee10e9bc3_story.html. For all other tribes, the expanded jurisdiction takes effect on March 7, 2015. PUB.L. No. 113–4, § 908, 127 Stat. at 125–126. The grant of jurisdiction represents a step toward keeping Indian women safe. The historic jurisdictional gap that arose from non-Indians that committed offenses on Indian reservations nevertheless proves troubling.

Prosecutions in tribal court will continue exclusively against Indian defendants until tribal courts successfully institute the requirements of 25 U.S.C. § 1304. The byproduct of tribal courts' limited jurisdiction to preside exclusively over prosecutions of Indian domestic violence offenders has resulted in predominantly Indian domestic violence offenders as defendants charged under 18 U.S.C. 117(a). *See, e.g., United States v. Cavanaugh,* 680 F.Supp.2d 1062 (D.N.D.2009) *rev'd,* 643 F.3d 592 (8th Cir. 2011); *United States v. Shavanaux,* 2:10 CR 234, 2010 WL 4038839 at *1 (D.Utah Oct. 14, 2010) *rev'd,* 647 F.3d 993 (10th Cir.2011). Kirkaldie falls within this framework.

Kirkaldie attests that "a tribal conviction in Tribal Court" constituted one of his "final conviction[s] on at least 2 separate prior occasions." 18 U.S.C. 117(a); (Doc.

21 at 2.) A Government witness testified during the motion hearing that Kirkaldie had served jail time as part of the prior conviction in tribal court. (Doc. 33.) Against this backdrop, Kirkaldie brings two challenges to the indictment that the grand jury returned against him.

### Uncounseled Tribal Convictions as Requisites to Charge

■ Kirkaldie first requests that the Court determine whether his "tribal conviction[s] for domestic violence satisf[y] the constitutional requirements to charge Mr. Kirkaldie with the present Indictment" in this Court. (Doc. 21 at 4.) Kirkaldie argues that his former "conviction[s] entered without the assistance of counsel cannot be used in a subsequent proceeding." (Doc. 21 at 3.) Kirkaldie alleges that the tribal court proceedings failed to meet "the standard for waiver of the right to counsel in Federal Court." (Doc. 21 at 4.) Kirkaldie concludes that the use of an "uncounseled tribal conviction" violates *United States v. Ant,* 882 F.2d 1389 (9th Cir.1989), and the Sixth Amendment to the United States Constitution. (Doc. 21 at 5.) The Government rejects application of *Ant* for three reasons.

The Government first argues that *Ant's* foundation, largely developed in *Baldasar v. Illinois,* 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980), no longer supports *Ant's* holding. (Doc. 24 at 8.) The Supreme Court overruled *Baldasar* explicitly in *Nichols v. United States,* 511 U.S. 738, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994). In overruling *Baldasar,* the Supreme Court held that consistent with the Sixth and Fourteenth Amendments, an "uncounseled misdemeanor conviction, valid under *Scott [v. Illinois,* 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979) ] because *no prison term was imposed,* is also valid when used *to enhance punishment* at a subsequent conviction." *Nichols,* 511 U.S. at 749, 114 S.Ct. 1921 (emphasis added). The Government contends, as clarified at oral argument, that *Nichols's* overruling of *Baldasar* sufficiently shook the foundations of *Ant* to dictate a different outcome than *Ant.* (Doc. 24 at 8; *see also* doc. 33.)

The Government further contends that *Ant* precludes only the use of Kirkaldie's prior tribal conviction as "substantive evidence of guilt." (Doc. 24 at 9.) The Government claims that it seeks to use Kirkaldie's tribal convictions only as "the fact of the convictions" to constitute an element of the offense rather than "for the truth of the matters asserted in the plea," as prohibited in *Ant.* (Doc. 24 at 9; *see also* doc. 33.) The Government argues that the use of the tribal convictions to prove an element of the offense, rather than to prove the truth of the matter asserted, takes this case outside *Ant's* holding. (Doc. 24 at 9.)

The Government lastly suggested during oral argument that a decision to dismiss the indictment, based on the reasoning in *Ant,* would serve to write 18 U.S.C. § 117(a) off the books. (Doc. 33.) The Government pointed out that the overwhelming majority of persons whom the Government will elect to charge will be persons who have exclusively prior tribal court convictions, rather than state or federal convictions. (Doc. 33.) The Government claimed that Congress wrote 18 U.S.C. § 117 in order to fill the jurisdictional gap that persons who have repeat tribal court convictions present. (Doc. 33.)

The Court's analysis begins with *Ant,* 882 F.2d 1389. In *Ant,* an American Indian defendant pled guilty to assault and battery in Northern Cheyenne Tribal Court. *Ant,* 882 F.2d at 1390. Ant received a sentence of six months in jail. *Ant,* 882 F.2d at 1391. No lawyer represented Ant, although Judge Spang of Northern Cheyenne Tribal Court likely ad-

vised Ant of his right to a lawyer at his own expense. *Ant,* 882 F.2d at 1390–91.

The grand jury handed down a federal indictment four months later that charged Ant with voluntary manslaughter based upon the same conduct that comprised the Northern Cheyenne assault and battery charge. *Ant,* 882 F.2d at 1390–91. Ant moved to suppress his guilty plea from the tribal court, in relevant part, based on the fact that his right to counsel under the Sixth Amendment had been violated. *Ant,* 882 F.2d at 1391. The District Court denied that motion on the basis that "[c]omity and respect for legitimate tribal proceedings requires that this Court not disparage those proceedings by suppressing them from evidence in this case." *Ant,* 882 F.2d at 1391.

The Ninth Circuit analyzed whether Ant had entered the guilty plea under conditions that complied with the United States Constitution. *Ant,* 882 F.2d at 1393–94. The Ninth Circuit determined that "the available facts do not support the conclusion that Ant knowingly and intelligently waived his Sixth Amendment rights under federal and Ninth Circuit standards" in the tribal court proceedings. *Ant,* 882 F.2d at 1394. Upon consideration of whether Ant's plea met the requirements of the United States Constitution for use in a federal prosecution in federal court, the Ninth Circuit held explicitly that "a constitutionally infirm guilty plea ... made in compliance with tribal law and with the ICRA ... is *inadmissible in a federal prosecution.*" *Ant,* 882 F.2d at 1395 (emphasis added).

On its face, *Ant* would appear to foreclose the Government's use of Kirkaldie's guilty plea in tribal court as part of a federal prosecution. *Ant,* 882 F.2d at 1395. A critical factual difference between *Ant* and Kirkaldie's situation demands, however, a more searching analysis. The

grand jury in *Ant* indicted the defendant in federal court based upon the same conduct that comprised the tribal indictment. *Ant,* 882 F.2d at 1390. This circumstance resulted in the Government seeking to prove "evidence of guilt" through the use of the uncounseled guilty plea in tribal court. *Ant,* 882 F.2d at 1390.

In contrast, the Government argues that it seeks here to use Kirkaldie's uncounseled guilty plea in tribal court as proof of an element of the offense, rather than conclusive proof of Kirkaldie's guilt. (Doc. 33.) The Government correctly argues that it must prove that Kirkaldie "assaulted K.S.," "after having been convicted of at least two separate, prior domestic assaults." (Doc. 1 at 1.) Kirkaldie essentially challenges whether the Government's proffer of his uncounseled guilty pleas in tribal court constitutes competent evidence to prove an element of section 117(a). Kirkaldie relies on the fact that "the standard for waiver of the right to counsel in Federal Court was not met in the Tribal Court proceedings." (Doc. 21 at 4.) Said another way, Kirkaldie alleges a violation of his Sixth Amendment right to counsel under the United States Constitution when his uncounseled tribal court convictions serve as proof of prohibited conduct under 18 U.S.C. § 117(a).

The Government alleged at the hearing on this motion that no Sixth Amendment violation could occur when the Sixth Amendment does not apply in tribal court. (Doc. 33.) The Court agrees generally with regard to tribal court proceedings. Those proceedings fall exclusively under the purview of either the Indian Civil Rights Act (ICRA) or tribal law. 25 U.S.C. § 1302(6). The Court understands that the tribal court proceedings against Kirkaldie fall "outside the bounds of the United States Constitution." *See Cavanaugh,* 643 F.3d at 604 n. 7.

An unmistakable distinction arises in a federal prosecution. The Ninth Circuit has considered "whether a conviction for a misdemeanor crime of domestic violence that was validly obtained in tribal court, under circumstances that would have violated the Sixth Amendment in state or federal court, may qualify as the predicate misdemeanor offense for a prosecution under [18 U.S.C.] § 922(g)(9)." *United States v. First,* 731 F.3d 998, 1008 (9th Cir.2013). Section 922(g)(9) criminalizes the possession of a firearm after conviction "in any court" of a crime of domestic violence. 18 U.S.C. § 922(g)(9). The Ninth Circuit held that "[t]he use of such a [tribal court] conviction to trigger the 'civil disability' of possessing a firearm d[id] not violate the Sixth Amendment." *First,* 731 F.3d 998, 1008–09.

The Ninth Circuit recognized, however, that in federal court any evidence of a prior conviction that the Government intends to use to prove part of a subsequent prosecution to "support guilt or enhance punishment" in a criminal proceeding must comport with the protections that the United States Constitution affords to all United States citizens. *First,* 731 F.3d at 1008; *see also Custis v. United States,* 511 U.S. 485, 497, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994) (recognizing denial of counsel as the only exception to the ban on collateral attacks of prior convictions for use of enhanced sentencing under the Armed Career Criminal Act).

 The *First* standard applies to the Government's characterization that Kirkaldie's prior uncounseled convictions will prove an element of the charge against him. (Doc. 33.) To comply with *First's* mandate, any prior conviction—particularly one that constitutes a requisite element to support guilt under 18 U.S.C. § 117(a)—must comport with the protections of the United States Constitution.

*First,* 731 F.3d at 1008. Tribal courts constitute the only judicial forum in the United States where the constitutional right to counsel does not exist for a United States citizen. *First,* 731 F.3d at 1002.

For example, juvenile criminal proceedings differ from adult proceedings, as evidenced by the fact that juveniles receive different procedural protections. *See, e.g., McKeiver v. Pennsylvania,* 403 U.S. 528, 545, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) (denying the right to a jury trial in juvenile adjudications). Juveniles nevertheless receive the right to counsel in those proceedings. *In re Gault,* 387 U.S. 1, 41, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). United States citizen-detainees in trials before military tribunals similarly receive the right to counsel. *See Hamdi v. Rumsfeld,* 542 U.S. 507, 539, 124 S.Ct. 2633, 159 L.Ed.2d 578 (2004) (plurality opinion) (holding that a citizen-detainee "unquestionably has the right to access to counsel"); *see also In re Guantanamo Bay Detainee Continued Access to Counsel,* 892 F.Supp.2d 8, 28 (D.D.C.2012) (confirming access to counsel for non-U.S. detainees held at the U.S. naval base in Guantanamo Bay). The right to counsel remains disputed as a statutory right in immigration proceedings, but those proceedings involve defendants who are not United States citizens. *See Montes–Lopez v. Holder,* 694 F.3d 1085, 1090–91 (9th Cir.2012) (detailing the circuit split on whether prejudice should be an element of a right to counsel claim under the Immigration and Nationality Act); *see also* Thais–Lyn Trayer, *Elementary Unfairness: Federal Recidivism Statutes and the Gap in Indigent American Indian Defendants' Sixth Amendment Right to Counsel,* 63 AM. U.L.REV. 219, 223 n. 19 (2013).

 The Sixth Amendment right to counsel serves as a constitutional minimum in all state and federal criminal proceed-

ings that may result in a sentence of actual imprisonment. *First,* 731 F.3d at 1002. Kirkaldie served a sentence of actual imprisonment in the tribal court. (Doc. 33.) The Government concedes that Kirkaldie failed to receive appointed counsel in tribal court. (Doc. 24 at 3.) The question arises whether, despite the lack of counsel and the imposition of a sentence of actual imprisonment, Kirkaldie's convictions remain constitutionally valid to "support guilt or enhance punishment" due to the absence of counsel in the tribal court. *First,* 731 F.3d at 1008.

The Government conceded during oral argument that fulfillment of an element of a federal offense with a procedure that fails to comport with the United States Constitution represents the most troubling thing about prosecution under 18 U.S.C. 117(a). (Doc. 33.) The Court agrees. A defendant may effect a valid waiver of the Sixth Amendment right to counsel in any proceeding where the entitlement to an attorney exists only if the trial court undertakes a thorough inquiry to ensure that the defendant has made an informed decision. *Ant,* 882 F.2d at 1394. The Government bears the burden to prove waiver. *Ant,* 882 F.2d at 1394. Any doubts regarding waiver must be resolved in favor of no waiver. *Ant,* 882 F.2d at 1394. Kirkaldie identified correctly at the hearing that the record omits any information about the tribal court proceedings. (Doc. 33.) A court may not presume waiver of counsel from a silent record. *Burgett v. Texas,* 389 U.S. 109, 114–15, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967).

The Government remains unable to prove that Kirkaldie validly waived his right to counsel under the United States Constitution. *Ant,* 882 F.2d at 1394. ICRA admittedly permits a conviction in the absence of counsel in tribal court. 25 U.S.C. § 1302(a)(6). The protections of the United States Constitution attach to a prosecution in federal court and to evidence necessary for that prosecution. The Sixth Amendment forbids the Government's attempt to admit Kirkaldie's prior uncounseled convictions in tribal court to establish an element of the offense under section 117(a) without proof of a valid waiver.

"Deprived of counsel when tried, convicted, and sentenced, and unable to challenge the original judgment at a subsequent" trial where guilt would be based on the uncounseled judgment, "a defendant in [Kirkaldie]'s circumstances faces incarceration on a conviction that has never been subjected to the crucible of meaningful adversarial testing." *Alabama v. Shelton,* 535 U.S. 654, 667, 122 S.Ct. 1764, 152 L.Ed.2d 888 (2002). *First* further prohibits the use of a prior uncounseled conviction from tribal court to support guilt if the uncounseled conviction would violate the United States Constitution. *First,* 731 F.3d at 1002. The Government's attempt to limit its use of Kirkaldie's tribal convictions only as "the fact of the convictions" must fail under the reasoning and analysis in *Ant.*

*Ant* remains binding law in the Ninth Circuit. The Court must follow precedent. *See Gonzalez v. Arizona,* 677 F.3d 383, 390 n. 4 (9th Cir.2012) (en banc). The Government advocates that the Court abandon *Ant* in favor of the reasoning of the Eight and Tenth Circuits in analyzing indictments that allege a violation of 18 U.S.C. § 117.

The District Court for the District of North Dakota recognized that the Sixth Amendment imposes no duty on tribal courts to provide counsel for indigent defendants in *United States v. Cavanaugh,* 680 F.Supp.2d at 1075. The prior convictions of a member of the Spirit Lake Sioux Tribe were valid upon their inception. *Ca-*

vanaugh, 680 F.Supp.2d at 1074–75. The prior terms of incarceration in tribal court failed to violate the United States Constitution, tribal law, or ICRA. *Cavanaugh*, 680 F.Supp.2d at 1074–75. The court determined, however, that "the introduction of uncounseled tribal court convictions in federal court as proof of an essential element of a federal crime violate a defendant's right to counsel and due process." *Cavanaugh*, 680 F.Supp.2d at 1076. The district court dismissed the indictment against the defendant. *Cavanaugh*, 680 F.Supp.2d at 1076.

The Eight Circuit reversed. It determined the Sixth Amendment inapplicable. *Cavanaugh*, 643 F.3d at 598. The Eighth Circuit deemed it necessary "to accord substantial weight to the fact that Cavanaugh's prior convictions involved no actual constitutional violation" due to the tribal court forum. *Cavanaugh*, 643 F.3d at 603. The Eighth Circuit declined to analyze the convictions with an eye toward tenets of Federal Indian Law. The Eighth Circuit instead reasoned that the use of prior uncounseled tribal court convictions failed to violate the federal defendant's right to counsel because the federal constitutional right to appointed counsel did not apply in tribal court. *Cavanaugh*, 643 F.3d at 604–05. The Eighth Circuit credited exclusively the procedural validity of the prior uncounseled tribal court conviction. *Cavanaugh*, 643 F.3d at 604–05.

The District Court for the District of Utah similarly recognized that "significant Constitutional issues tend to arise" based upon the use of uncounseled tribal court convictions for a Ute tribal member in a subsequent federal prosecution in *United States v. Shavanaux*, 2010 WL 4038839 at *1. The district court dismissed the indictment based on both the district court decision in *Cavanaugh*, 680 F.Supp.2d at 1076, and the reasoning in *Custis*, 511 U.S. at 485, 114 S.Ct. 1732. *Shavanaux*, 2010 WL 4038839 at *1

The Tenth Circuit reversed. It deemed the Sixth Amendment inapplicable to tribal court proceedings. *Shavanaux*, 647 F.3d at 998. The Tenth Circuit focused on principles of comity and due process to conclude that the uncounseled tribal court convictions failed to comply with the Constitution, yet simultaneously did not violate the Constitution. *Shavanaux*, 647 F.3d at 1001. The Tenth Circuit avoided the Sixth Amendment analysis through a focus on due process under the Fifth Amendment. *Shavanaux*, 647 F.3d at 1001. The Tenth Circuit acknowledged, however, that its decision stood "at odds with the Ninth Circuit." *Shavanaux*, 647 F.3d at 997.

The Court also notes briefly *Montana v. Spotted Eagle*, 2003 MT 172, 316 Mont. 370, 71 P.3d 1239. In *Spotted Eagle*, the defendant, a Blackfeet tribal member, had four prior uncounseled convictions in tribal court for driving under the influence (DUI). *Spotted Eagle*, 2003 MT 172 at ¶ 4. Those convictions constituted the predicate offenses for a state felony DUI offense. *Spotted Eagle*, 2003 MT 172 at ¶ 4. Spotted Eagle challenged the use of the prior convictions as predicates based on the fact that they violated his right to counsel under both the United States and Montana Constitutions. *Spotted Eagle*, 2003 MT 172 at ¶ 13. The Montana Supreme Court held in similar fashion that "pursuant to the comity afforded tribal court judgments, the ICRA, and our deference to tribal sovereignty," prior uncounseled tribal court convictions could "enhance Spotted Eagle's state DUI conviction from a misdemeanor to a felony." *Spotted Eagle*, 2003 MT 172 at ¶ 34.

These cases espouse a conclusion that fails to reconcile the unique dual rights that every individual Indian holds: the rights of a United States citizen under the

United States Constitution, and the distinct rights as a tribal citizen under ICRA. U.S. Const. amend. VI; 25 U.S.C. § 1302(a)(6). The absence of counsel otherwise guaranteed by the Sixth Amendment in tribal court directly results from ICRA. 25 U.S.C. § 1302(a)(6). No issue of constitutional moment arises from that proceeding.

An issue of constitutional moment arises when an uncounseled tribal court proceeding serves as evidence of a federal crime. The statutory lack of counsel in a tribal court proceeding would sustain a federal prosecution. This chain reaction sanctions the Indian defendant's deprivation of counsel in tribal court—purportedly to protect Indian tribes—and distorts the notion of Tribal sovereignty. This outcome further tramples the constitutional protections of a United States citizen. The Government's use of evidence of a prior uncounseled conviction to fulfill an element of a crime, particularly one that resulted in incarceration, conflicts with the fundamental right to counsel.

The Court must confront an unpalatable decision: dilute a defendant's constitutional rights due to the defendant's membership in a sovereign tribal nation; or foreclose the prosecution of an alleged habitual domestic violence offender due to the unique structure of tribal courts. Congress's declaration of a trust responsibility to safeguard Indian women lacks effect in its current form due to the requirement that otherwise unconstitutional evidence fulfill the elements of the offense. Pub.L. No. 109–162, at § 901. Despite Congress's shortcoming, select Indian tribes in the United States presently possess the resources to convict defendants in a manner that would allow those convictions to be introduced properly as evidence in federal court.

This point addresses the Government's final argument that an unfavorable order would serve to write Section 117(a) off the books. (Doc. 33.) Sections 1304(b) and (c) of Title 25 of the United States Code allow tribal courts to exercise jurisdiction over "[d]omestic and dating violence" offenses. 25 U.S.C. §§ 1304(b), (c). Section 1304(d)(4) requires that a defendant in tribal court must receive "all other rights whose protection is necessary under the Constitution of the United States," including the right to court-appointed counsel, as part of such an exercise of supplemental jurisdiction. 25 U.S.C. § 1304(d)(4). Tribal provision of counsel to a defendant would eliminate concerns with regard to unconstitutional evidence necessary to demonstrate the requisite prior conviction under 18 U.S.C. § 117(a). The logical result demonstrates that the Court's decision would not write 18 U.S.C. § 117(a) "off the books."

■■■ Tribal courts represent the frontline institutions to preserve the peace in Indian communities, to help resolve civil disputes among community members and businesses on Indian lands, and to ease the burden of an additional 1.6 million cases that would otherwise docket in federal court. *See Tribal Court and the Administration of Justice in Indian Country: Hearing Before the Sen. Comm. on Indian Affairs,* 110th Cong. 9–10 (2008) (Statement of Hon. Roman J. Duran, First Vice President, Nat'l Am. Indian Court Judges Assoc.). The Supreme Court has acknowledged that "tribal courts are important mechanisms for protecting significant tribal interests." *United States v. Wheeler,* 435 U.S. 313, 332, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978). The due process that tribal courts provide to tribal citizens represents a sovereign prerogative.

The Court declines to work "at cross-purposes with the federal Indian law policy

of encouraging tribal self-government and self-development." Hon. William C. Canby, Jr., *Commentary: Treatment of Tribal Court Convictions,* 17 FED. SENT'G REP. 220, 221 (2005). This order addresses only the validity of evidence in a United States District Court that arises from an uncounseled conviction in tribal court. The use of evidence obtained in a manner "outside the Constitution," *Cavanaugh,* 643 F.3d at 604 n. 7, as integral evidence in a federal prosecution would violate Kirkaldie's right "to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI.

An adequate Sixth Amendment remedy "must 'neutralize the taint' of a constitutional violation, while at the same time not grant a windfall to the defendant or needlessly squander the considerable resources the State properly invested in the criminal prosecution." *Johnson v. Uribe,* 700 F.3d 413, 425 (9th Cir.2012) *cert. denied,* — U.S. —, 134 S.Ct. 617, 187 L.Ed.2d 409 (2013) (quoting *Lafler v. Cooper,* — U.S. —, —, 132 S.Ct. 1376, 1388, 182 L.Ed.2d 398 (2012)). The "taint" arises from requisite evidence outside the Sixth Amendment needed to convict Kirkaldie. *Uribe,* 700 F.3d at 425. Evidence against a defendant in a section 117(a) prosecution may sustain Sixth Amendment protections despite the nature of Kirkaldie's prosecution. 18 U.S.C. 117(a) (noting that prior convictions may arise from state, federal, or tribal court).

The Court's remedy must "put the defendant back in the position he would have been in if the Sixth Amendment violation never occurred," without "unnecessarily infring[ing] on competing interests." *Uribe,* 700 F.3d at 425. The Government maintains the ability to prosecute under section 117(a) without the use of constitutionally infirm evidence. *Uribe,* 700 F.3d at 425. Dismissal of the indictment represents the only result that vindicates Kirkaldie's constitutional rights at this stage of the proceedings.

**Equal Protection**

Kirkaldie also argues that 18 U.S.C. § 117(a) "deprives a certain class of citizens of their constitutional right to have counsel appointed based on their race, ethnic origin, and political class," (Doc. 21 at 5.) The Government replies that tribal status constitutes a "political rather than racial distinction." (Doc. 24 at 11.) The Court declines to reach this constitutional equal protection question in advance of the necessity of it. *Lyng v. Northwest Indian Cemetery Protective Ass'n,* 485 U.S. 439, 445, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988); *Lee v. Walters,* 433 F.3d 672, 677 (9th Cir.2005).

***Conclusion***

Therefore,

**IT IS ORDERED,** that Kirkaldie's motion to dismiss the indictment (Doc. 20) is **GRANTED;**

**IT IS FURTHER ORDERED,** that Kirkaldie's motion to change plea (Doc. 26) is **DENIED** as moot.